[No. 484-2. Division Two. December 8, 1971.]

A.A.B. ELECTRIC, INC., *Appellant,* v. STEVENSON PUBLIC SCHOOL DISTRICT NO. 303 *et al., Respondents.*

*M. K. Westgard* (of *Westgard & Retacco*), for appellant.
*Robert K. Leick,* for respondents.

PETRIE, C.J.—Plaintiff brings this appeal from a summary judgment dismissing its application for a writ of mandamus sought in superior court to compel defendants to accept its bid for the electrical work on a school construction project.

The board of directors of Stevenson Public School District No. 303, Skamania County, advertised for bids on the construction of a middle school in Carson, Washington. The bids were to be opened at the school board meeting on September 17, 1970 at 8 p.m. Plaintiff timely submitted its bid on the electrical work together with the required 5 per cent bid bond properly executed. When the bids were opened and read the board noted that, though plaintiff's bid of $99,239 was the lowest received on that portion of the project, it was not signed. For that reason the bid was rejected as incomplete and the job was awarded to the next highest bidder at $102,275. Thereafter plaintiff offered to sign its bid and made demand on defendants to be awarded the contract. In addition, plaintiff offered to hold the school district harmless and to accept the defense of any lawsuit which might result from awarding it the contract based on its failure to sign the bid.

When the school board refused to change its decision, plaintiff sought a temporary injunction and a writ of mandamus ordering defendants to permit it to sign the bid and award it the contract. The temporary injunction was denied. Then in a summary proceeding the trial court dismissed plaintiff's application for a writ of mandamus, concluding that plaintiff's failure to sign the bid constituted a material defect as a matter of law which the board could not have waived and that, had the board waived the signa-

ture, it would have given plaintiff an unfair advantage over the other bidders.

The question presented is whether the failure to sign a bid submitted for work on a public construction project is a defect in the bid which cannot be waived as a mere informality. We agree with the trial court and hold that it is.

We do not have the benefit of the full text of the specifications issued in the call for bids, but the record does disclose that one of the specifications required corporate bids to be signed by the authorized officers of the corporation. In addition, the specifications provided that bids which were incomplete or which were conditioned in any way could be rejected as informal. Another provision reserved the right in the school district to reject any and all bids and to waive informalities in connection with the opening of bids. It is not disputed that, except for the lack of any signature whatsoever, plaintiff's bid was otherwise complete and totally acceptable.

 Plaintiff contends that the missing signature was a mere informality and the school board had the legal obligation to accept it as the lowest responsible bid. Plaintiff argues that such obligation arises by the mandate of RCW 28A.58.135 which states: "The contract for the work or purchase shall be awarded to the lowest responsible bidder . . ."; and further, that the irregularity was not so serious as to deprive the public of the advantage of the lowest bid. We cannot agree. A bid is no more than an offer to contract. There is no contract until the offer is accepted. *Mottner v. Mercer Island,* 75 Wn.2d 575, 452 P.2d 750 (1969). To be binding the specifications required that it be signed, and, since the bid was that of a corporate bidder, it must have been signed by the corporation's authorized officers. The omission or irregularity was not a mere technicality which could be waived. It was a substantial requirement, one called for in the bid specifications. *Whitemarsh Township Auth. v. Finelli Bros.,* 408 Pa. 373, 184 A.2d 512 (1962).

██ ██ The general scheme of competitive bidding statutes is to obtain the advantages of free and fair competition

for the benefit of the general public. It is well recognized that such statutes are

> "for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption, and to secure the best work or supplies at the lowest price practicable, and they are enacted for the benefit of . . . taxpayers, and not for the benefit or enrichment of bidders . . . ."

*Savage v. State*, 75 Wn.2d 618, 621[1], 453 P.2d 613 (1969). Nevertheless, it is also recognized that another purpose is to provide bidders with a fair forum for the award of public contracts, and necessarily so. It is by protecting this secondary purpose that the primary benefits of the competitive bidding system can be insured to the general public. This requires a guarantee of impartial treatment for all those participating in public bidding and, therefore, bids with material defects should be rejected. However, immaterial irregularities can be waived as mere informalities. The test of whether or not a variance is material is whether or not it gives a bidder a substantial advantage or benefit not enjoyed by other bidders. *Gostovich v. West Richland*, 75 Wn.2d 583, 452 P.2d 737 (1969). In the case at bar the omitted signature can only be considered to be a material defect. The bid was not binding on the plaintiff until properly signed by its corporate officers. If the contract had been awarded to plaintiff, plaintiff would thereby have been in a position of substantial advantage over the other bidders by the fact that it could have accepted or rejected the contract in retrospect.

■ Nor can we agree with plaintiff's additional contentions. Plaintiff argues that any invalidity in its bid was corrected by the fact that it was accompanied by a valid, properly executed bid bond. The argument is based on the assumption that, regardless of whether its bid was signed, the bonding company would have been bound on the surety obligation had plaintiff been awarded the contract. Plaintiff

---

[1]Quoting from 10 McQuillin, Municipal Corporations § 29.29 (3d ed. 1966).

makes special reference to a letter, obtained from its bonding company and made a part of the record, stating that the company considered itself bound on the surety contract even though the bid was unsigned. On this, plaintiff concludes the school district was adequately protected in the event plaintiff refused to honor its bid.

We recognize that the purpose of requiring a bid bond is to insure that a certain amount of money, here 5 per cent of the bid, will be paid in the event the successful bidder fails to enter into a formal contract. It is a type of liquidated damages and represents added incentive to discourage withdrawal of bids. *See Comment, Competitive Bidding —Public Construction Contracts in the State of Washington*, 39 Wash. L. Rev. 796 (1964). We cannot agree with plaintiff, however, that the school board would have been adequately protected by the bond and therefore should have accepted the lowest bid. "The general rule is that the surety is not liable to the creditor unless his principal is liable, thus he may plead the defenses which are available to his principal." 10 W. Jaeger, Williston on Contracts § 1214 at 714 (3d ed. 1967); *Tucker v. Brown*, 20 Wn.2d 740, 150 P.2d 604 (1944). The unsigned bid could not legally have been accepted. Since the plaintiff, as principal, would not have been liable to the school district, the bonding company, as surety, would not have been liable either.

■ Finally, plaintiff contends that because it signed the surety contract which was submitted along with the bid, its signature there was sufficient to bind it to the bid. We find no merit in this argument. The bid specifications required the *bids* to be signed. They contemplated there could be no offer capable of acceptance until the offeror had signed the *bid*. Indeed, the offer could not be enforced unless signed by the party to be charged, a signature being a mandatory requirement of the statute of frauds. *In re Estate of Tveekrem*, 169 Wash. 468, 14 P.2d 3 (1932); *Smith v. Twohy*, 70 Wn.2d 721, 425 P.2d 12 (1967); RCW 19.36.010. The bid bond was not a part of the offer contained in the bid, but only a condition precedent to acceptance of the offer. It was

a separate contract, conditional and totally dependent for its enforceability on the validity of the principal obligation. Plaintiff's signature on the surety contract could not have corrected the defect in the bid itself.

Plaintiff's bid was properly rejected as incomplete.

Affirmed.

PEARSON and ARMSTRONG, JJ., concur.