NEVADA COMMISSION ON ETHICS, STATE OF NEVADA, AND BARTON MYERS/SWISHER & HALL, A JOINT VENTURE OF BARTON MYERS ASSOCIATES, INC. AND SWISHER & HALL, AIA, LTD., APPELLANTS, v. JMA/LUCCHESI, A JOINT VENTURE OF LUCCHESI & ASSOCIATES, INC., AND JMA ARCHITECTS AND ENGINEERS; RAY LUCCHESI AND STEVEN CARR INDIVIDUALLY, RESPONDENTS.

No. 24640

January 4, 1994                                   866 P.2d 297

2

*Frankie Sue Del Papa*, Attorney General and *Louis Ling*, Deputy Attorney General, Carson City; *Harrison Kemp, Chtd.* and *Derek C. Ence*, Las Vegas, for Appellants.

*Gentile & Porter* and *David T. Wall*, Las Vegas, for Respondents.

# OPINION

By the Court, ROSE, C. J.:

## FACTS

In March, 1989, the University of Nevada, Las Vegas, (UNLV) formed a design committee to develop a design and plans for an architectural school building (the building) to be constructed at UNLV. Respondent Ray Lucchesi (Lucchesi) was a member of the design committee and a faculty member of the UNLV School of Architecture. The design committee held approximately thirty meetings over a two-year period to discuss the design aspects of the building. Lucchesi attended at least thirteen of these meetings. Many of the design requirements for the building were developed at these meetings. Marnell Corrao, Inc., who was a participant on the committee through one of its principals, Tony Marnell, produced several prospective designs for the building.

Thereafter, the design committee, UNLV representatives, and the State Public Works Board (SPWB) decided to sponsor a design competition for the building. The competition required several architectural firms to submit designs and build scale models in response to the design requirements the committee had developed. A "blind jury" would then judge these entries and would submit its recommendation to the SPWB for a final decision.

In July, 1991, the design committee announced the competition to the public and several architectural firms responded. A committee made up of SPWB staff then selected four firms to compete against each other for the opportunity to design the new building. Two of the four firms selected on this "short list" were JMA/Lucchesi (JMAL), a joint venture which respondents Lucchesi and Steven Carr (Carr) had formed in June of 1991, and appellant Barton Myers/Swisher Hall (BMSH). At all times relevant to this appeal, Lucchesi and Carr were practicing architects and members of the faculty of UNLV's School of Architecture.

Following the final vote which resulted in four votes for BMSH and four votes for JMAL, the SPWB awarded the design contract for the building to JMAL. On November 12, 1991, Robert Ferrari, the SPWB Secretary-Manager, wrote a letter to Dr. Robert Maxson, President of UNLV, informing Dr. Maxson that he would recommend that the SPWB select JMAL to design the

building. The letter was distributed to all members of the SPWB prior to the November 18, 1991, meeting at which the SPWB awarded the design contract for the building to JMAL.

Lucchesi, Assemblyman James W. McGaughey, and BMSH all separately requested an opinion from the Nevada Commission on Ethics (the Commission) regarding Lucchesi and Carr's participation in the design competition and their ability to contract with UNLV to design the building. On August 7, 1992, the Commission issued Opinion 91-12 finding, *inter alia,* that Lucchesi could not enter into a contract with UNLV to design the building because of NRS 281.481(3), which prevents public employees from bidding on a contract with the State if they have participated in preparing the designs or specifications for that contract.

On September 11, 1992, JMAL, Lucchesi, and Carr filed a petition for judicial review in the district court. On July 12, 1993, the district court issued a decision and order reversing the Commission's opinion on the grounds that JMAL had not submitted a "bid" within the meaning of NRS 281.481(3) and that the ethics statutes were directory and not mandatory. Both the Commission and BMSH appealed the district court's decision.

## DISCUSSION

The district court reversed the Commission's opinion because it found that the Commission erred in applying NRS 281.481(3) to Lucchesi and Carr because the district court concluded that design proposals are not "bids" within the meaning of NRS 281.481(3) and are therefore not covered by the statute. The district court further found that the Nevada Ethics in Government Law was "expressly directory and permissive at all material times herein." The Commission and BMSH contend that the district court failed to accord proper deference to the Commission's findings that the design proposals at issue were "bids" within the meaning of NRS 281.481(3) and that the Nevada Ethics in Government Law was mandatory at all times relevant to this appeal. The construction of a statute is a question of law. Therefore, independent appellate review of an administrative ruling, rather than a more deferential standard of review, is appropriate. Maxwell v. SIIS, 109 Nev. 327, 329, 849 P.2d 267, 269 (1993); Nyberg v. Nev. Indus. Comm'n, 100 Nev. 322, 324, 683 P.2d 3, 4 (1984).

*Whether the district court gave proper deference to the Commission's interpretation of NRS 281.481(3)*

The Nevada Ethics in Government Law (NRS 281.411-

281.581) outlines ethical standards to govern the conduct of government employees and officers. It also established the Nevada Commission on Ethics. NRS 281.455. The mandate of the Nevada Commission on Ethics is to "render an opinion interpreting the statutory ethical standards and apply the standards to a given set of facts and circumstances." NRS 281.511(1). In the instant matter, the Commission held four days of hearings and admitted almost 500 pages of evidence. The Commission deliberated over this voluminous record at three meetings over the course of three months and finally issued an opinion spanning some fifteen single-spaced pages. To say that the Commission considered this matter at length would be an understatement.

NRS 281.481(3) is part of the Nevada Ethics in Government Law and states, in pertinent part:

> Unless specifically prohibited by law, a public officer or employee, as such, is not precluded from making a bid on a government contract *if* the contracting process is controlled by rules of open competitive bidding, the sources of supply are limited, he [or she] has not taken part in developing the contract plans or specifications and he [or she] will not be personally involved in opening, considering or accepting offers.

(Emphasis added.)

Applying this statute to the facts in the case at bar, the Commission found that the "sources of supply" were not limited because numerous architects responded to the design competition. The Commission further found that Lucchesi and Carr were not involved in considering the offers. Most importantly, the Commission found that Lucchesi *had* "taken part in developing the contract plans or specifications" for the building. Based upon these findings, the Commission concluded that JMAL had gained an unfair advantage over the other competitors in the design competition. Neither party challenged these findings in the district court. Rather JMAL argued, and the district court agreed, that NRS 281.481(3) did not apply to the conduct of Lucchesi and Carr because they submitted "design proposals" and not "bids" as expressly stated in the statute.

BMSH and the Commission assert that the district court failed to accord proper deference to the Commission's interpretation of NRS 281.481(3). We agree. In State v. State Engineer, 104 Nev. 709, 766 P.2d 263 (1988), this court stated that " '[a]n agency charged with the duty of administering an act is impliedly clothed with power to construe it as a necessary precedent to administra-

tive action' and that 'great deference should be given to the agency's interpretation when it is within the language of the statute.'" *Id.* at 713, 766 P.2d at 266 (quoting Clark County School Dist. v. Local Gov't, 90 Nev. 442, 446, 530 P.2d 114, 117 (1974)). Furthermore, the Commission's power to construe the Nevada Ethics in Government Law is explicit in the statute rather than implicit. NRS 281.511(1). Accordingly, although this court may conduct a *de novo* review of the Commission's construction of the Nevada Ethics in Government Law, the district court was obligated to give deference to the construction afforded by the Commission. We conclude that the district court erred in failing to do so.

*Whether the "design proposals" at issue were "bids" within the meaning of NRS 281.481(3)*

The district court found that NRS 281.481(3) can only be applied to public employees who make a "bid" on a government contract. The definition of "bid" urged upon this court, and apparently accepted by the district court below, is that the term bid *only* applies to offers to contract based on a specified price. JMAL relies primarily upon NRS Chapters 332, 333, and 338 to support this interpretation. The cited sections govern purchasing by state and local governments. JMAL points specifically to NRS 333.330(1) which states that "[a]ll bids on more than one item on which bids are called for by the same notice shall be itemized and give a *price* for each item." (Emphasis added.) JMAL argues from this that "the term 'bid' is a term of art and has a specific meaning when used by our Legislature." JMAL also relies upon the testimony of two SPWB employees who testified that the design competition was not a bidding process.

In response, BMSH argues that "the key element in a 'bid' is not price, but a competitive offer to contract." To support its position, BMSH properly notes that this court should construe the term in light of the intention of the Legislature. In McKay v. Bd. of Supervisors, 102 Nev. 644, 650-51, 730 P.2d 438, 443 (1986), this court stated that:

> The leading rule of statutory construction is to ascertain the intent of the legislature in enacting the statute. This intent will prevail over the literal sense of the words. The meaning of the words used may be determined by examining the context and the spirit of the law or the causes which induced the legislature to enact it. The entire subject matter and policy may be involved as an interpretive aid.

(Citations omitted.)

The public policy rationale behind the Nevada Ethics in Government Law is set forth in NRS 281.421(1) which states:

> It is hereby declared to be the public policy of this state that:
> (a) A public office is a public trust and shall be held for the sole benefit of the people.
> (b) A public officer or employee must commit himself [or herself] to avoid conflicts between his [or her] private interests and those of the general public whom he [or she] serves.

We are not persuaded by JMAL's arguments as the stated policy of the Legislature, to prevent conflicts of interest, militates towards a more expansive reading of the term "bid" than the one which JMAL urges upon this court. A logical reading of the statutes involved reflects a legislative intent to prevent public employees from entering into *any* contract which would present a conflict between the employee's private interests and "those of the general public whom he [or she] serves," not just those contracts involving offers based on price. Further, the Legislature has modified the definition of a bid as it pertains to architects. *See* NRS 625.530(3); NAC 623.800.

There is additional support in the case law and legal treatises for this position. One such treatise states, for example, that "[a] bid is an offer submitted in response to an invitation for bids." 1B T. Toughey & B. McBride, Bender's Government Contracts § 101.10[5] (1984). This suggests that it is not the element of price which is crucial, but the element of competition amongst offers. Similarly, one court noted that "[a] bid is no more than an offer to contract." A.A.B. Electric, Inc. v. Stevenson Public School Distr., 491 P.2d 684, 686 (Wash.Ct.App. 1971). More importantly, this court has noted that "[t]he purpose of bidding is to secure competition, save public funds, and to guard against favoritism, improvidence and corruption." Gulf Oil Corp. v. Clark County, 94 Nev. 116, 118, 575 P.2d 1332, 1333 (1978). In light of the stated policy of the Legislature, the district court erred in concluding that design proposals were not "bids" within the meaning of NRS 281.481(3).

*Whether NRS 281.481 (3) excludes architects as persons "specifically prohibited by law" from bidding on State contracts*

A second argument asserted by JMAL which found support in the court below is that NRS 281.481(3) cannot be applied to architects because architects are specifically prohibited from bidding on government contracts. NRS 281.481(3) states that it applies to any public officer or employee "[u]nless [they are]

specifically prohibited by law . . . from making a bid on a government contract." NRS 332.115 states that government contracts for professional services are "by their nature . . . not adapted to award by competitive bidding." Therefore, JMAL argue that they are exempted from NRS 281.481(3) because architects are "specifically prohibited by law" from bidding on public projects.

JMAL seeks further support from NRS 625.530(3) and NAC 623.800. As previously noted, NRS 625.530(3) provides that the selection of an architect for a public project must be "made on the basis of the competence and qualifications of the . . . architect for the type of services to be performed, and not on the basis of competitive fees." Once the architect is selected, the architect and the agency must come to an "agreement upon a fair and reasonable fee." *Id.* NAC 623.800 contains a similar provision; it prevents an architect from submitting information "which would enable the public agency to evaluate the proposal on any basis other than the competence and qualifications of the registrant." These provisions, argue JMAL, show that architects may not bid on government projects and that therefore the bidding requirements of NRS 281.481(3) are inapplicable to them.

BMSH argues in rebuttal that these provisions only prevent architects from competing for government projects based on price or fees and not on the best design. Since "price was never a factor considered in the design competition," BMSH contends that neither provision was violated. BMSH also points to a recent amendment to NRS 281.481 which was passed on July 1, 1993. It reads, in relevant part, as follows:

> A full- or part-time faculty member in the University of Nevada System may bid on or enter into a contract with a governmental agency *if he [or she] has not taken part in developing the contract plans and specifications* and he [or she] will not be personally involved in opening, considering or accepting offers.

1993 Nev. Stat., ch. 536, § 1(3) at 2241 (emphasis added). BMSH does not argue that this amendment ought to be retroactively applied. Rather, they argue that the amendment evinces a legislative intent to counter the "semantic acrobatics" which JMAL urged upon the district court. We are persuaded that NRS 625.530 and NAC 623.800 are intended to prevent public agencies from awarding contracts for architectural services to the lowest bidder. Where a public facility is involved, public safety requires that factors such as expertise and experience take precedence over cost.[1] While architects may compete for government

---

[1]For example, NRS 625.530(3) provides in relevant part that "selection . . . must be made on the basis of . . . competence and qualifications."

projects, they may not do so on the basis of price. Therefore, JMAL would not be "specifically prohibited by law" so as to escape the purview of NRS 281.481(3), *unless they submitted bids based on price.*

Finally, it is worth noting that the Commission considered these very arguments at length and concluded that "[t]hese statutory and regulatory provisions enjoin architects in Nevada from being awarded a contract with the state based on a lowest price competitive bid. It does not prevent the state from selecting an architect based on other competitive criteria."

We conclude that NRS 281.481(3) does not exclude architects as persons "specifically prohibited by law" from bidding on state contracts unless the submitted bids were based on price.

*Whether the district court erred in reversing the Commission's finding that the Nevada Ethics in Government Law was mandatory at the time of Lucchesi and Carr's conduct*

The second major finding of the district court was that the Nevada Ethics in Government Law was "expressly directory and permissive at all material times herein." Appellants challenge this finding asserting that the amended version of NRS 281.481 is mandatory and was in effect when the prohibited acts occurred.

An examination of the language of the 1987 statute compared with the language of the new version of NRS 281.481 which took effect on October 1, 1991, shows a clear legislative intent to make the amended statute mandatory. The 1987 version of the statute contained the following preamble entitled "[e]ffect of code of ethical standards upon criminal law." "NRS 281.481 to 281.541, inclusive, are intended to be directory and preventive rather than punitive." NRS 281.551. The amended version now empowers the Commission to impose civil penalties for violation of the Nevada Ethics in Government Law. NRS 281.551 (as amended 1991). Further support for this interpretation is found in other recent amendments to the Nevada Ethics in Government Law. For example, the earlier version of NRS 281.481 began as follows: "A code of ethical standards is hereby established *as a guide* for the conduct of public officers and employees." (Emphasis added.) The statute now provides that "[a] code of ethical standards is hereby established *to govern* the conduct of public officers and employees." (Emphasis added.) Similarly, each of the subsections which previously began "[n]o public officer or employee *may*" was amended to read "[a] public officer or employee *shall not.*" (Emphasis added.) It is a well-settled principle of statutory construction that statutes using the word "may" are generally directory and permissive in nature, while those that

employ the term "shall" are presumptively mandatory. *See* State v. American Bankers Insurance Company, 106 Nev. 880, 882, 802 P.2d 1276, 1278 (1990); Sengbusch v. Fuller, 103 Nev. 580, 582, 747 P.2d 240, 241 (1987). We conclude that the obvious and substantive changes outlined above indicate that the amended version of the statute is clearly mandatory in nature.

Additionally, we are persuaded that JMAL's "prohibited acts" took place after the amended version of NRS 281.481 was in force. Specifically, although JMAL's "misconduct" began before the amendments—Lucchesi being on the design committee, deciding to enter the design competition, and forming a joint venture for that purpose one month before the competition was publicly announced—JMAL also committed prohibited acts *after* October 1, 1991, when the Nevada Ethics in Government Law became mandatory. JMAL submitted its design on November 1, 1991, and the competition was not judged until November 7-8, 1991; therefore, the actual competition did not take place until that time. Although JMAL may have obtained an unfair advantage prior to NRS 281.481 becoming mandatory, it is the *use* of that advantage, rather than the act of obtaining it, that is forbidden. JMAL clearly used its unfair advantage after the statute became mandatory. We conclude that the submission of the entry combined with the judging process is sufficient post-amendment conduct to sustain the Commission's decision.

We note that the Commission found that both SPWB and the University of Nevada System told Lucchesi that they were not aware of any problems with JMAL's entry into the contest. Two witnesses testified that they were unaware that Lucchesi was a full-time faculty member when they gave their permission for him to enter the design competition. We are persuaded that Lucchesi's error was innocent and made in good faith, and we agree with the findings of the Commission in that regard. However, this guiltlessness does not negate the fact that JMAL committed prohibited acts after October 1, 1991, when the Nevada Ethics in Government Law became mandatory. Public confidence in the integrity of the government contracts bidding process should be maintained at all costs, even at the expense of those whose errors are inadvertent. Innocence cannot deflect the appearance of impropriety. Furthermore, the fact remains that JMAL and Lucchesi obtained an advantage over their fellow competitors by virtue of Lucchesi's position as a public employee.

## CONCLUSION

We conclude that the district court erred in reversing the

opinion of the Nevada Commission on Ethics for the following reasons: (1) the district court failed to give proper deference to the Commission's opinion in construing and applying the Nevada Ethics in Government Law; (2) NRS 281.481(3) applies to the design proposal submitted by JMAL; and (3) the Nevada Ethics in Government Law was mandatory when Lucchesi and Carr submitted their design proposal.

Accordingly, we reverse the decision of the district court and reinstate the opinion of the Nevada Commission on Ethics.

YOUNG and SHEARING, JJ., concur.

STEFFEN, J., concurring:

I disagree with the reasoning of both the majority opinion and the dissent written by my brother SPRINGER, but for reasons which I shall hereafter explain, I am forced to agree with the majority in concluding that the order entered by the district court must be reversed.

The Commission found that Mr. Lucchesi did not use his position as a faculty member at UNLV to secure an unwarranted advantage for JMA/Lucchesi ("JMAL") in violation of NRS 281.481(2). This finding is supported by substantial evidence and is not implicated in the resolution of this appeal.

The State Public Works Board ("SPWB") decided to award the design contract for the architectural building at UNLV ("the building") to JMAL, and there is no evidence suggesting that JMAL's selection was based on any improper factor. The Commission, however, concluded that JMAL, though innocent, violated NRS 281.481(3),[1] thus precluding its right to compete for the design contract on the building.

The prohibitory first sentence of NRS 281.481(3) is not an issue in this appeal for JMAL did not *"participate as an agent of government"* in the negotiation or execution of any contract. Indeed, the Commission alluded to no violation attributable to that provision. The Commission's ruling against JMAL was

---

[1]NRS 281.481(3) provides:

A public officer or employee shall not participate as an agent of government in the negotiation or execution of a contract between the government and any private business in which he has a significant pecuniary interest. Unless specifically prohibited by law, a public officer or employee, as such, is not precluded from making a bid on a government contract if the contracting process is controlled by rules of open competitive bidding, the sources of supply are limited, he has not taken part in developing the contract plans or specifications and he will not be personally involved in opening, considering or accepting offers.

based entirely on the Commission's interpretation of the second sentence of NRS 281.481(3), which provides:

> Unless specifically prohibited by law, a public officer or employee, as such, is not precluded from making a bid on a government contract if the contracting process is controlled by *rules of open competitive bidding,* the sources of supply are limited, he has not taken part in developing the contract plans or specifications and he will not be personally involved in *opening, considering or accepting offers.*

(Emphasis mine.)

In my view, the highlighted segments of the quoted provision make it apparent that the provision relates only to the process of formal bidding where, in response to invitations to bid, a bidder submits a sealed *offer* capable of creating a binding contract upon acceptance by the cognizant government contracting authority. The thrust of this provision is that a public officer or employee may not bid on government contracts *unless* (1) the contracting process is controlled by rules of *open competitive bidding;* (2) the sources of supply are limited; (3) he [or she] has not taken part in developing the contract plans or specifications; and (4) he [or she] will not be personally involved in *opening, considering, or accepting offers.*

NRS 281.481(3) thus prohibits public officers and employees from contracting with the government except in limited-source, open competition procurements where the public officer or employee who bids has not participated in developing the plans and specifications upon which the bids will be based. Additionally, the public officer or employee must not participate in opening, considering or accepting the offers submitted by the bidders. All of these conditions are descriptive of a formal, open bidding process where the offeror submits an offer that is sufficiently complete and responsive to create a binding contract upon acceptance by the government. Of necessity, one of the bid components would have to be price.

NRS 625.530(3)[2] precludes architects from submitting bids for government service contracts based upon fees or price. Since NRS 281.481(3) inferentially allows public officers and employees to contract with the government only under the limited

---

[2]In pertinent part, NRS 625.530(3) provides:

> The selection of a . . . registered architect to perform services . . . must be made on the basis of the competence and qualifications of the . . . architect for the type of services to be performed, and not on the basis of competitive fees. If, after selection of the . . . architect, an agreement upon a fair and reasonable fee cannot be reached with him, the public agency may terminate negotiations and select another . . . architect.

conditions specified in that provision, and since architects are precluded by NRS 625.530(3) from participating in the submission of bids conforming to the requirements of NRS 281.481(3), JMAL was ineligible for the building contract.[3]

The Commission broadly interpreted NRS 281.481(3) to include architects where the process of selecting the architect is "entirely competitive in every respect except as to 'fees'." In construing the statute as it did, the Commission sought to avoid the disincentive to serve as faculty or State licensing board members, where such public employee-architects would otherwise be ineligible to bid on state-owned building projects.

There are two reasons why the position taken by the Commission is unsound. First, the interpretation of the statute is in reality an amendment designed to avoid what the Commission understandably considers to be a public detriment if the statutory language is given "absolute" effect. Even the courts are enjoined from rewriting the plain language of a statute in order to supply a more reasonable effect. Second, the Commission's construction modifies the terms of NRS 625.530(3). The latter statute mandates the selection of an architect on the basis of competence and qualifications rather than "competition in every respect other than fees." Indeed, the statute specifically allows the public agency to simply "select" another architect if the one first selected is unable to agree with the government agency on the amount of fees to be charged. The Commission, in expanding the meaning and scope of NRS 281.481(3), has necessarily contracted the meaning and scope of NRS 625.530(3) at least insofar as it applies to architects who are public employees. Such powers are not accorded to the Commission.

After construing NRS 281.481(3) to include architects competing in all respects other than fees, the Commission concluded that the contracting process utilized in selecting an architect for the building was controlled by the referenced statute and that Lucchesi violated, albeit innocently, the terms of the statute by participating in the development of the contract plans and specifications, thereby gaining an advantage for JMAL. The evidence of record does not support the finding. A reasonable reading of NRS 281.481(3) disqualifies a public-employee architect who participates in creating the plans and specifications contained in the request for bids. Since there were no requests for bids under the meaning of the statute, there were no plans or specifications developed in whole or in part by Lucchesi as a basis for "bidding" on the services contract.

---

[3]The Commission found, without apparent dispute, that both Lucchesi and Carr, principals in JMAL, were public employees by reason of their positions as faculty members at UNLV.

Moreover, even under the statutory construction supplied by the Commission, there was no bidding process for the building that was "entirely competitive in every respect except as to 'fees'." The Commission noted that before the design competition was extended to four firms, the SPWB considered a larger number of firms and evaluated their "professional qualifications, strengths and abilities to design this particular building" before reducing the number of participants to four. This evaluation process was based upon judgment rather than competition. In short, NRS 281.481(3) was simply not implicated in the process utilized by the SPWB in selecting an architect for the building.[4]

I have reluctantly decided to concur with the majority opinion because of what I perceive to be the only reasonable interpretation of the constrictive language of NRS 281.481(3). I therefore urge the Legislature to seriously consider the consequences of the existing statute as it applies to architects and other professionals, in order to assure the right of the State to secure professional services in accordance with the best interests of the State.

SPRINGER, J., dissenting:

The issue in this case is a very simple one: Must the Lucchesi group, as a matter of law, forfeit its contract with the State? The state Ethics Commission sued Lucchesi claiming that a provision in the Ethics in Government Law, NRS 281.481(3), "precludes" Lucchesi, a state employee, from contracting with the State. The trial court held, as a matter of law, that the ethics in government chapter in effect when the State awarded the contract, was a non-punitive, permissive "guide" that does not afford a legal basis for declaring a forfeiture of the contract. The trial court further held, as a matter of law, that even if the statute were to be read as specifically prohibiting certain conduct, Lucchesi was not in "violation" of the statute. I agree completely with the trial court's judgment and fail to see any basis for setting this contract aside.

---

[4]There is no indication in the Commission's opinion that the Commission would have denied the power of the SPWB to have selected an architect other than the "winner" of the design competition had the SPWB determined that other factors involving competence and qualifications were of greater importance to the project. Indeed, I found it somewhat strange that the Commission expressly limited its "reconciliation" of NRS 281.481(3) and NRS 625.530(3) to the facts of this particular case, and did not attempt to construe and reconcile "those provisions where the State contracts with the architect for services without *any* competitive process of selection, as distinct from that which occurred in this matter." Since the Commission found JMAL's conduct innocent, and the record supports such a finding, I would have difficulty voting to deprive JMAL of its contract were it not for what appears to be a clear, if not wise, prohibition in NRS 281.481(3).

This case has a strange complexion. The Ethics Commission was created to render advisory opinions relating to the *ethical* conduct of state officers and employees. It is a lay body in the executive department of government. It has no power to adjudicate "violations" of the law much less to invalidate contracts which the State has executed. It is very odd that this court would accept the *legal* opinion of an *ethics* commission and "reinstate the opinion of the Nevada Commission on Ethics," as though the Commission's advisory opinion had the effect of law. Although the trial court may have to give some "deference" to the factfinding of the Commission, it certainly was not bound by the Commission's legal opinion that Lucchesi had "violated" the law, or that Lucchesi should be "precluded" from contracting with the State, or that Lucchesi's existing contract should be forfeited.

My reasons for wanting to affirm the judgment of the trial court can be outlined as follows:

1. At the time Lucchesi supposedly violated the Nevada Ethics in Government Law, it was merely an advisory "guide" for employee conduct. The law did not set up legal or ethical standards that public employees were required to follow nor did it provide a legal basis for declaring forfeiture of this or any other contract.

2. The trial court was not obliged to accept the Ethics Commission's opinion as to the legal meaning of NRS 281.481(3).[1] The trial court was correct in its interpretation of the statute and was correct in ruling that the statute does not prohibit any given conduct and is not subject to being "violated."

3. Even if NRS 281.481(3) did authorize the Ethics Commission to declare the forfeiture of a state contract, Lucchesi's conduct is expressly authorized and fits within the permissible conduct described in the statute.

4. This record contains absolutely no evidence that Luc-

---

[1]Because many references are made in this dissent to the noted statute, I set out the current version of NRS 281.481(3) in the margin for the reader's convenience:

· A public officer or employee shall not participate as an agent of government in the negotiation or execution of a contract between the government and any private business in which he [or she] has a significant pecuniary interest. Unless specifically prohibited by law, a public officer or employee, as such, is not precluded from making a bid on a government contract if the contracting process is controlled by rules of open competitive bidding, the sources of supply are limited, he [or she] has not taken part in developing the contract plans or specifications and he [or she] will not be personally involved in opening, considering or accepting offers.

chesi has done anything ethically or legally wrong, much less that he committed acts which would warrant the invalidation of his contract with the State.

*Contract forfeiture: Does the Ethics Commission have the statutory power to deprive the State and Lucchesi of their contractual rights?*

The answer to the captioned question is that the Ethics Commission has no power to declare a contract to be illegal or invalid. It is indeed strange that this court would invest the Commission with such powers not granted to it by the legislature. This advisory, executive commission has taken it upon itself to issue an "Opinion" declaring that Lucchesi has violated NRS 281.481(3) and, hence, that he is "precluded" from going ahead with the performance of his contract with the State. The trial court, naturally, ruled against the Ethics Commission and said, in effect, to the Ethics Commission:

> "You have the statutory power to give advisory, non-punitive 'opinions' relating to the *ethical* conduct of state employees, but you do not have the power to invalidate a legal contract nor do you have the power to declare that anyone has violated the law, much less the power to declare that a state employee is 'precluded' from going forward with an existing state contract. Legal questions as to the enforceability of this contract are not a matter of ethics but of *law,* and are to be decided by the court."

The Ethics Commission intervened in this case at the request of Lucchesi himself, because Lucchesi wanted to be vindicated *morally.* I doubt that he would have made this request if he had dreamt that the Commission was going to declare his contract *legally* ineffective; but, of course, Lucchesi had no reason to believe that the Ethics Commission would attempt to do anything more than issue an advisory *ethical* opinion as provided for in the Ethics in Government Law.

NRS 281.511 empowers the *Ethics* Commission to "render an opinion" relating only to "statutory *ethical* standards." (Emphasis added.)[2] The Ethics Commission did rule correctly in the

---

[2]As I point out in the text the legislature has not, in enacting NRS 281.481(3), adopted any definitive statutory standards of behavior. NRS 281.481(3), rather than providing "statutory ethical standards" to govern the conduct of state officers and employees, merely outlines one kind of dealing with the state that is deemed to be permissible. The statute in question does not set ethical standards; it does not provide a list of "Thou-shalt-not's" for the ethical guidance of governmental personnel. It does not recite any conduct that state employees are forbidden to do; it merely recites one set of circumstances in which a contract is allowable.

present case that Lucchesi was guilty of no willful wrongdoing, that is, guilty of no ethical breach. Unfortunately, the Commission did not stop with its ethics decision but, rather, went on to express its *legal* opinion, namely that "NRS 281.481(3) precludes Mr. Lucchesi and Mr. Carr, as state employees, from contracting with the State of Nevada through its agency, the University of Nevada Systems, for architectural services." (Emphasis added.) The effect of this declaration is entirely legal in import and has nothing to do with the "ethical standards" that the Commission is supposed to be attending to.

By definition, an ethics commission deals with ethical questions, not legal questions. This Commission is entitled to make judgments relating to "ethical standards." NRS 281.511(1). It is not empowered to decide questions of law. Ethics is the "science of moral duty." *Webster's Collegiate Dictionary* (5th ed. 1943). The Ethics Commission may render advisory opinions on the moral quality of given conduct, that is to say, whether the conduct is *right* or *wrong.* The Commission is this case, sometimes using the word "innocent," declared that Lucchesi, in his dealings with the State, had done nothing *wrong.* Still, going far beyond the rendering of an ethics opinion, the Ethics Commission declared that Lucchesi's conduct was "in violation of law," and adjudicated his ineligibility to proceed with the awarded contract. This decision goes far beyond the authority given to the Ethics Commission by the statute and is an intrusion upon the powers of the judicial branch of government.

*The meaning and consequence of the legal opinion issued by the Ethics Commission*

Obviously, the responsibility of interpreting statutes belongs to the courts; and even if the Commission took it upon itself to render an advisory legal opinion, it is the duty of the court to determine the legal meaning of a statute, *de novo. See* Maxwell v. SIIS, 109 Nev. 327, 849 P.2d 267 (1993).

The Ethics Commission's interpretation of NRS 281.481(3) is clearly wrong. Lucchesi did not and could not *violate* this statute because the Nevada Ethics in Government Law, at the time when Lucchesi supposedly violated it, contained no command which was susceptible to being disobeyed. There was nothing to violate.

At the time when Lucchesi is charged with being "in violation" of NRS 281.481(3), the statute was expressly stated to be a mere *guide* for the conduct of state employees. The trial court was undeniably right when it held that NRS 281.481(3) was merely "directory and permissive" and "no more than a discretionary guide for the conduct of public employees." As the trial court further correctly ruled, the statute was "preventive rather

than punitive." *See* NRS 281.551. The Nevada Ethics in Government law which Lucchesi is charged with having "violated," contained the following preamble: "A code of ethical standards is hereby established *as a guide* for the conduct of public officers and employees." (Emphasis added.) Similarly, each of the subsections began: "No public officer or employee *may* . . . ."[3] (My emphasis.) It is an elementary principle of statutory construction that statutes employing the word "may" are directory and permissive in nature, while those that employ the term "shall" are mandatory statutes. *See, e.g.,* State v. American Bankers Insurance Company, 106 Nev. 880, 882, 802 P.2d 1276, 1278 (1990); Sengbusch v. Fuller, 103 Nev. 580, 582, 747 P.2d 240, 241 (1987). The statute in effect when this contract was signed was not mandatory and does not provide a basis for forfeiting the parties' contractual interests.

### NRS 281.481 does not "preclude" anything

Even if the Ethics in Government Law were not, by its own terms, and as held by the trial court, "permissive" and "preventative rather than punitive," the particular statute in question, NRS 281.481(3), is not framed in terms of prohibition and sanction and does not "preclude" the performance of any act by state employees.

What nobody in this case seems to have noticed is that NRS 281.481(3), instead of telling what is prohibited by the statute, tells only what is "*not* precluded." The statute informs public officers and employees that under one specified set of circumstances they can be assured that they "are not precluded" from contracting with the State. If an employee engages in open competitive bidding, *and* sources of supply are limited, *and* no part is taken in developing plans and specifications, *and* there is no involvement in the opening, considering or accepting of offers, then the employee can rest assured that he or she is "not precluded" from contracting with the State. The statute recites one set of circumstances under which a state employee is assured that contracting with the State is ethically acceptable. The statute does not specify that these are the *only* circumstances under which a state employee can ethically deal with the state. NRS 281.481(3) does not command or prohibit any specified kinds of conduct, nor does it impose any sanction for violation. This reality is consistent with the nature of the Ethics in Government Law in effect at the time—an advisory, non-prohibitive "guide" for the conduct

---

[3] These subsections have, since the time this controversy arose, been rewritten by the legislature to read: "A public officer or employee *shall not* . . . ." (My emphasis.)

of state employees.[4] The trial court saw clearly that there was no legal or ethical basis for cancelling the contract executed by the State and the Lucchesi group. I should think that the jurists of this appellate court would also be able to understand that the subject statute contains no sanctions and certainly cannot be used to punish Lucchesi for his "innocent" actions.[5] To go a step further, however, it appears to me that Lucchesi's case fits squarely into the set of circumstances listed in NRS 281.481(3) which are permissible and which are expressly "not precluded."

### Lucchesi is "not precluded" from contracting with the State

As everyone involved in this litigation knows, Lucchesi was, along with other faculty, a member of an informal planning committee which got together back in 1989 to discuss the possibility of constructing a building to house the UNLV College of Architecture. At some point, the members of the informal committee decided to approach UNLV officials and representatives of the Public Works Board in order to include the real decision-makers in their dream. Because of the special nature of the

---

[4]To elaborate a bit on the point: the statute merely gives one instance of *permitted* contract activity between the state and its employee, rather than defining prohibited activity. Not only does the statute fail to define any prohibited conduct, it also fails to provide for any sanction, such as, "Any public officer or employee who violates this statute shall forfeit all benefits to be derived from a State contract." Even a cursory reading of NRS 281.481(3) reveals that the statute does not purport to "preclude" or inter-dict any conduct on the part of public employees. NRS 281.481(3) does not prohibit or *preclude* anything. All the statute does is to tell public employees what kind of conduct is *not* "precluded," that is to say, a public employee is "*not* precluded from making a bid on a government contract *if* . . . ." (My emphasis.) Merely listing one kind of conduct that is *not* unethical might give public employees one example of what the legislature considered to be *ethical,* but it does not provide notice of prohibited conduct or of what kind of conduct might result in the kind of punitive consequences suffered by Lucchesi in this case. If public employees were to become interested in finding out what does *not* preclude them from bidding on government contracts, then they might be interested in examining the list of conditions that appear in NRS 281.481(3). I would surmise, however, that public employees would be much more interested in what they *are* prohibited from doing rather than what they are *not* prohibited from doing. In this regard they get no help from NRS 281.481(3). There is no language in the statute that prohibits or "precludes" any form of conduct. The statute could be read to indicate that out there somewhere there might be something, not listed in the statute, that would fall in the category of being "specifically prohibited by law," but the statute itself certainly does not specifically prohibit conduct of any kind.

[5]"We are persuaded that Lucchesi's error was *innocent* and made in good faith, and we agree with the findings of the Commission in that regard." (Majority Opinion, at 10; my emphasis.)

project and the coveted prestige understandably attached to the design of a university architecture building, the Public Works Board (the state agency charged with the responsibility of selecting the architect) agreed that it would collaborate with university representatives in conducting an advisory design competition to assist the Board in the sensitive task of selecting the best possible architectural group to design the Architecture Building. A public invitation was issued to architects, inviting them to submit tentative plans and a scale model for the project. Architects were told that the competition would be judged by a "blind jury." Although it was surely understood by all that the wining of such an unofficial, advisory competition would not entitle any of the contestants to be selected for the job by the Public Works Board, the public invitation nonetheless lured a number of firms into participating in the design competition. The contestants were eventually reduced to four architectural groups, among whom was the Lucchesi group.

Although Lucchesi's being awarded the architectural contract by the Public Works Board was certainly not "specifically prohibited by law" (*see* NRS 281.481(3); *supra* note 1), Lucchesi himself was sensitive to the fact that he was on the UNLV faculty and had participated in the early planning discussions for the new building. As the Ethics Commission notes in its opinion, Lucchesi expressed his concern to the dean of the Architectural School and to a member of the staff of the Public Works Board. As stated in the Ethics Commission's opinion, "Mr. Lucchesi inquired of the SPWB (Public Works Board) and the University of Nevada System as to the legality of his participation in the design competition before entering the competition. Both the SPWB and the University of Nevada System told him they were not aware of any problems." (Opinion, Ethics Commission at 14.) No one associated with UNLV or with the State Public Works Board expressed any ethical or legal concerns about Lucchesi's entering the informal design contest or about his ultimate eligibility for selection by the Public Works Board. This is evidenced by the Ethics Commission's finding Lucchesi "innocent" and by its express conclusion that "Mr. Lucchesi did not use his position as a faculty member at UNLV to secure any unwarranted advantage for JMA/Lucchesi, a business entity in which he has a significant pecuniary interest, in violation of NRS 281.481." (*Id.*)

The Commission also found as a fact that Lucchesi was not involved in the Public Works Board's "considering or accepting" the proposals of the competing architectural firms; however, the Commission did conclude that Lucchesi "participate[d] in devel-

oping the program and, therefore, the contract plans and specifications." Lucchesi did, as indicated above, "participate in developing the program," but this does not mean that he had anything to do with the preparation of "contract plans and specifications."[6] We must keep in mind that all Lucchesi did, other than engage in early planning sessions as a member of the School of Architecture, was to make himself available for selection by the Public Works Board under conditions in which he had made full disclosure of his position and in which the Board was fully aware of his connection with UNLV. I would conclude that because there is no evidence that Lucchesi actually prepared "contract plans and specifications," Lucchesi fits into the "not precluded" language of NRS 281.481(3) and that he is expressly authorized to contract with the State in the manner that he did.

## *"Unfair advantage"*

During oral argument of this case there was some discussion to the effect that Lucchesi, despite his full disclosure to UNLV and the State Public Works Board, might have secured some kind of "unfair" advantage over other architects in being selected for the job. Such an idea is contrary to the express findings of the Commission, but, nonetheless, the answer to the unfair-advantage question, if there is such a question, is simply that the design competition was plainly advisory only and nonbinding. Winning the contest was not an "advantage" at all because winning the contest was not a condition of getting the job.

The Public Works Board was entitled to consider, and properly should have considered, Lucchesi's long-time association with the project in making its decision to hire Lucchesi. I note that neither the Ethics Commission nor the district court considered any supposed unfair advantage to Lucchesi as a factor in the Public Works Board's decision to hire Lucchesi. Lucchesi did nothing legally or morally wrong by entering the contest; and, certainly, his contract with the State may not properly be cancelled on the basis of his having accepted the State's invitation to enter the contest. The Ethics Commission rested its findings, conclusions and opinion on what I see as the legally impossible "violation" of NRS 281.481(3). The reviewing district court simply and properly held that since Lucchesi was not *legally*

---

[6]Although the record does not show that Lucchesi prepared any plans or specifications, even if I were to give "deference" to this baseless conclusion, I would, of course, continue to maintain that there is still nothing that Lucchesi has done, legally or ethically, that would justify forfeiture of his contract.

disqualified from contracting with the State, he should be permitted to go ahead with the job.[7] I agree.

Because of the political overtones that surround this case, I find myself having some real qualms about this court's rejecting the judgment of the trial court and wresting this contract from the hands of an honest and straightforward professional architect to whom the State Public Works Board has lawfully awarded a commission to do the architectural work for the new Architecture Building at UNLV. I see no reason to interfere with the trial court's judgment in this case. I can understand that the new Ethics Commission might be anxious to get some exercise, but it should not be allowed to do so at the expense of Lucchesi and his associates. Lucchesi did nothing morally wrong and nothing legally wrong. He is the victim of an erroneous legal opinion issued by a lay board. The trial court properly decided that Lucchesi's contract with the State was legally binding, and there is no reason in the world why this court should set that judgment aside.

---

[7]The district court also based its legal validation of the Lucchesi contract on the fact that Lucchesi did not make a "bid" as this term is used in NRS 281.481(3). I do not deal with this question in the body of my dissent because, as I have said, the language in this statute deals only with what is *not* "precluded," not with what is "specifically prohibited." Nonetheless, it also seems pretty clear that there was no "bidding" in this case. Architectural contracts for state jobs are quite different from other public contracts in that "selection . . . must be made on the basis of . . . competence and qualifications" and not on submitted price. NRS 625.530(3). As with the other architects involved in this case, Lucchesi was only offering himself and his architectural services to the state on the basis of his claimed "competence and qualifications." He was in no sense "bidding" for this job. He was selected, presumably, on the basis of his competence and qualifications. He was not bidding in the ordinary sense of saying, "I will do it for such and such a price." The trial court was correct in its interpretation of the meaning of the term "bid" as not applying to this case under the mentioned statute; but this does not impact the correctness of the trial court's decision in this case because, as stated, aside from the bid issue, the statute does not directly or indirectly prohibit Lucchesi's, or any other person's conduct, and does not authorize a forfeiture of contract rights such as this under any circumstances. That Lucchesi never offered a "bid" of any kind is further grounds for supporting the trial court's ruling.