[No. 1824-1.     Division One.     September 4, 1973.]

EASTSIDE DISPOSAL CO., *Respondent*, v. THE CITY OF MERCER ISLAND *et al.*, *Appellants*, CONTAINER HAULING CORPORATION, *Respondent*.

*Montgomery, Purdue, Blankinship & Austin, Alan F. Austin, LeSourd, Patten, Fleming & Hartung,* and *George M. Hartung, Jr.,* for appellants.

*Rutherford, Kargianis & Austin, George Kargianis, Hoof, Shucklin & Harris,* and *Clifford Hoof,* for respondents.

HOROWITZ, J.—Eastside Disposal Company, a competing bidder for a 5-year garbage collection contract, attacks the validity of the contract awarded to General Disposal Company by the City of Mercer Island. The issue raised is whether the absence of General's signature on its successful bid proposal is a waivable informality when the bid proposal refers to the accompanying bid bond and that bond in turn refers to the bid proposal, the bond being signed by the bidder and its surety. The trial court held the absence of the signature on the bid proposal was not an informality which could be waived. It accordingly held invalid the bid and the garbage collection contract awarded on the basis of that bid. We reverse.

The City of Mercer Island, pursuant to its ordinance No. 264, advertised for bids for a contract for the collection of garbage within the city of Mercer Island for a 5-year period commencing January 1, 1971. The city furnished the bid proposal forms, including bond and specifications. The published advertisement reserved to the city the right "to reject any or all bids and to waive informalities." In response to the advertisement, the city received bids from General Disposal Company and Eastside Disposal Company. General's bid proposal was in writing, but it was not signed in the space available for that purpose on the bid proposal form. The $5,000 bid bond form, however, was signed by General and its surety, referred to in the proposal, and submitted as a part of the proposal. The bid bond also recited:

THE CONDITION OF THIS OBLIGATION IS SUCH, That, whereas the Principal has submitted or is about to submit a proposal to the Obligee on a contract for Garbage Collection within the City of Mercer Island . . .

The City Council of the City of Mercer Island determined General's failure to sign its name in its bid proposal was a waivable informality. The city accepted General's bid as the lowest responsible one and executed the garbage collection contract with General. General then commenced performing its contract on January 1, 1971.

Eastside failed in its attempt to temporarily enjoin General and the city from entering into or performing the garbage collection contract. General succeeded in obtaining a temporary injunction to enjoin Eastside and Container Hauling Corporation, which was joined as an additional defendant, from interfering with General's collection of garbage within the city of Mercer Island. Container and Eastside then claimed damages from General and the city for interference with Eastside and Container's garbage collection in the city of Mercer Island.

Subsequently cross-motions for summary judgment were filed by General and the city on the one hand, and Eastside and Container on the other. On July 21, 1972, the court granted summary judgment to Eastside and Container. The court then dissolved the temporary injunction against Eastside and Container, but denied them damages and denied General's and the city's motions for summary judgment of dismissal.

General and the city appeal. Eastside and Container cross-appeal the denial of their claims for damages. The disposition of the appeal and cross-appeals ultimately turns on whether the absence of a signature on General's bid proposal is an informality the city could legally waive.

Ordinance No. 264 § 5, pursuant to which the advertisement for bids was made, requires:

> Written proposal for said contract shall be made to the City at the time and place called for in a legal notice published at least once in the official newspaper of the City which proposals shall contain at least the following information:
>
> . . .
> Each such proposal shall be accompanied by a certified check or bid bond in the amount of $5,000.00, which sum shall be forfeited to the City in the event of the acceptance of such proposal by the City and the failure of the successful bidder to timely enter into the contract  . . .

The form of bid proposal includes a copy of ordinance No. 264 and the specifications. General's bid proposal is submitted on the city's forms. There is no express ordi-

nance, specification or advertisement requirement that the "written proposal" called for in the ordinance be signed. The bid proposal, on page 1, states the bid bond in the amount of $5,000 "is submitted herewith." The bond is later particularly identified as the "Bid Bond in the amount of $5000.00 issued through Dawson & Co., 417 - 2 Ave. W., Seattle. For General Insurance Co. of America." Following the proposal is a blank form of garbage collection contract required by the city. The bid bond refers to the bid proposal in the language already quoted. The bond is signed by General and the surety. General's financial statement is attached to its bid proposal, showing General's assets and liabilities and other pertinent information. There is no signature, however, after the line at the end of the proposal reading "Yours very truly."

There is no claim the absence of General's signature on the bid proposal prevented the city, Eastside, or anyone else from knowing that both the bid and the bid bond were that of General. Eastside and Container contend, however, the signature is essential to satisfy the statute of frauds, RCW 19.36.010, which requires a signature by the party to be charged on a contract described therein. We do not agree. It should be noted in passing the defense of the statute of frauds would be available to the bidder, but not to the surety on the bid bond. *Backus v. Feeks*, 71 Wash. 508, 129 P. 86 (1913).

■ Assuming that RCW 19.36.010 applies to offers such as a bid proposal rather than to the contracts described in the statute, the bid bond signature is nevertheless sufficient. The bid proposal and bid bond are part of the entire bid submitted by General in response to the advertisement for bids. The bid proposal and the bid bond are each in writing, the two writings being connected with the other by internal reference. Under these circumstances, a signature on the bid bond is sufficient to hold General on its bid proposal as the party to be charged. In *Grant v. Auvil*, 39 Wn.2d 722, 238 P.2d 393 (1951), the court upheld the

validity of a contract against a claim that it was not signed as required by the statute of frauds. The court said:

> [T]he note or memorandum [in order to satisfy the requirements of the statute of frauds] may consist of several writings, though the writing containing the requisite terms is unsigned, if it appears from an examination of all the writings that the writing which is signed by the party to be charged was signed with the intention that it refer to the *unsigned writing,* and that the writings are so connected by *internal reference* in the signed memorandum to the unsigned one, that they may be said to constitute one paper relating to the contract. . . .
>
> Since the purpose of the statute is to require a formality of proof in order to make the contract enforcible, it is immaterial with what purpose the requirement of the statute is fulfilled. It is not essential that the signed memorandum be intentionally made as a memorandum of the contract. . . . The document signed by the party to be charged (other requisites being present) may even attempt to cancel or repudiate the agreement, and, nevertheless, be operative to satisfy the statute.

*Grant v. Auvil, supra* at 724-25.

The next question is whether, if the statute of frauds is inapplicable, the advertisement for bids as a matter of contract law confers upon the city, under the circumstances here, the right to treat General's failure to sign the bid proposal as a mere informality the city could waive. We answer the question in the affirmative.

██ An informality is an irregularity as to a matter of form which does not prejudicially affect the substantial rights of the interested parties. *E.g., Thibodeaux v. Thibodeaux,* 112 La. 906, 36 So. 800 (1904); *Rose v. Osborne,* 136 Me. 15, 1 A.2d 225 (1938). The city treated the failure to sign the bid proposal as an inadvertent oversight. The city had a right to believe General did not intend to submit a void bid for the purpose of obtaining a nonexistent advantage over other bidders. This is all the more true when nothing in the ordinance, specifications or advertisement required General's signature to be on the bid proposal form when it was on the bid bond submitted as part of General's bid for the garbage collection contract.

In the instant case the city was empowered, but not required, to waive informalities. It chose not to insist upon General's written proposal being signed, especially when the accompanying bid bond contained General's signature. By waiving the absence of the signature, the city was able to obtain the advantages of the lowest responsible bid for the people of the city. There is no claim that the city acted in bad faith. The claim is, rather, that it did not follow the law.

■ When a public body offeree invites the submission of a written offer expressly required to be signed by the offeror, the offeree may intend a signature requirement imposed for its benefit to be either a matter of substance or merely a matter of form. Thus, an express signature requirement was treated as a matter of substance in *Whitemarsh Township Auth. v. Finelli Bros., Inc.*, 408 Pa. 373, 184 A.2d 512 (1962), and in certain other instances was treated merely as a matter of form. *Prendergast v. St. Louis*, 258 Mo. 648, 167 S.W. 970 (1914); *Interstate Power Co. v. McGregor*, 230 Iowa 42, 296 N.W. 770, 146 A.L.R. 315 (1941). A signature merely permitted rather than expressly required is a fact giving rise to an inference the offeree intends the absence of a signature is not to be deemed a matter of substance. This inference seems especially warranted if the permitted, but not expressly required, signature is from only one of two or more signed writings submitted together in response to the offeree's invitation, the writings being connected together by internal reference. In *Interstate Power Co. v. McGregor, supra,* the " 'Instructions to Bidders' " provided " 'in case of corporations the same [bid] shall be signed by a legally authorized representative of the corporation.' " The court nevertheless said, at page 50:

> The defendants had the right to waive such defect, but they also had a right to insist upon the due execution of the written proposal by a proper signature.

Eastside and Container rely heavily upon *A.A.B. Elec., Inc. v. Stevenson Pub. School Dist. 303*, 5 Wn. App. 887, 491

P.2d 684 (1971). It is true the case contains language supporting their position, but the controlling reason relied on in the opinion shows the case to be distinguishable. In *A.A.B. Elec., Inc.*, at pages 889-91, the court relies heavily upon the fact that

> one of the specifications required corporate bids to be signed by the authorized officers of the corporation. . . .
> . . . . It was a substantial requirement, one called for in the bid specifications. . . .
> . . . . The bid was not binding on the plaintiff until properly signed by its corporate officers. . . .
> . . . . The bid specifications required the *bids* to be signed. They contemplated there could be no offer capable of acceptance until the offeror had signed the *bid*.

The court accordingly held the signature on the bid proposal to be a substantial rather than a mere formal requirement. It cited *Whitemarsh Township Auth. v. Finelli Bros., Inc., supra. Whitemarsh* held the absence of the signature was fatal because (1) the instructions to bidders promulgated by the township authority expressly required the bidder to sign his proposal, and (2) the instructions provided further that " '[n]o proposal will be considered . . . which is not properly made out and signed in writing by the bidder. . . .' " 408 Pa. at 378. The provisions relied on in *A.A.B. Elec., Inc.* and in *Whitemarsh* are not found in the instant case in either the ordinance, specifications or advertisement of the city.

*A.A.B. Elec., Inc.* also relied on two additional reasons for treating as fatal to the validity of the bid proposal the absence of a signature thereon: First, the bid was void because RCW 19.36.010, the statute of frauds, requires a signature by the party to be charged; and, secondly, the bid bond was not part of the offer, *i.e.*, the bid proposal, the bond being dependent for its enforceability upon the validity of the principal obligation. The failure to comply with the express signature requirement in the specifications that the signature be on the bid proposal would be reason

enough on which to base the holding in *A.A.B. Elec., Inc.* In this sense the additional reasons are not essential to the court's holding. Nevertheless, with due respect, we cannot agree with the additional reasons given when sought to be applied here. In the instant case (1) there was no express signature requirement in the ordinance, specifications or advertisement that the signature be on the bid proposal; (2) the statute of frauds has no application to an offer, but if it does, the signature on the bid bond suffices under the doctrine of *Grant v. Auvil, supra*; and (3) that the bid bond was part of the offer because referred to in the bid, the bond in turn referring to the offer.

Eastside alternately contends that General's bid was defective, first, because it failed to supply certain information allegedly required by ordinance No. 264 § 5, and, secondly, because it failed to obtain a permit or certificate from the Washington Utilities and Transportation Commission to engage in the business of operating as a garbage and refuse collection company. The trial court did not find it necessary to pass on these contentions. The sufficiency of the information furnished was upheld when the temporary injunction was issued against Eastside based on findings and conclusions then entered. *See* conclusions of law Nos. 4, 5, 6, 7, 8, 9 and 11. There is no showing the City Council "abused its discretion through fraud or manifest error" in finding that General's bid was that of "the lowest responsible bidder under R.C.W. 35.23.353." Conclusion of law No. 11. Nor can we accept Eastside's second contention. Neither ordinance No. 264 § 3, nor RCW 81.77.020 requires a bidder to obtain the permit or certificate described, and RCW 81.77.020 expressly provides that RCW 81.77 "shall not apply to the operations of any garbage and refuse collection company under a contract of garbage or refuse disposal with any city or town, nor to any city or town which itself undertakes the disposal of garbage or refuse."

The conclusions reached make it unnecessary to consider other contentions of the parties except for the matter next considered.

Eastside and Container have cross-appealed. The sole error assigned by each is the dismissal of its claim for damages. Prior to the call for bids, Eastside's original certificate of convenience and necessity issued by the Utilities and Transportation Commission of the State of Washington was split between Eastside and Container, they operating in the same territory. After the split, Eastside was authorized to haul garbage from the premises using under 10-cubic-yard containers, and Container had the right to haul garbage from the premises using containers of 10 cubic yards or more. The two companies had a 15-year noncompetition agreement relating to the size of the container. The temporary injunction obtained by General prevented Eastside and Container from collecting garbage in the city of Mercer Island after General was awarded an exclusive 5-year garbage collection contract. Ordinance No. 264 not only requires its garbage contractor to collect all garbage in the city of Mercer Island, but section 3 of the ordinance forbids anyone else from engaging in the business of collecting garbage in that city. Such an ordinance, by the express provisions of RCW 81.77, supersedes the otherwise existing right to collect garbage within the territorial limits of the city conferred upon holders of certificates of public convenience and necessity. RCW 81.77.020; *Spokane v. Carlson,* 73 Wn.2d 76, 436 P.2d 454 (1968).

The conclusion reached makes it unnecessary to consider other arguments advanced in support of the view that damages are not recoverable. *See Mottner v. Mercer Island,* 75 Wn.2d 575, 452 P.2d 750 (1969).

The judgment against General Disposal Company and the City of Mercer Island is reversed with directions to dismiss the actions of Eastside Disposal Company and Container Hauling Corporation, and to enter a permanent injunction in favor of General similar in scope to the temporary injunction dated December 31, 1970.

SWANSON, C.J., and FARRIS, J., concur.