**SPAWGLASS CONSTRUCTION CORPORATION,**
Appellant,

v.

**The CITY OF HOUSTON, Appellee.**

No. 14–97–01224–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 23, 1998.

Gregory M. Cokinos, Robert A. Plessala, Houston, for appellant.

M. Arnold Govella, Bertrand L. Pourtear, II, Houston, for appellee.

Before AMIDEI, FOWLER and DRAUGHN,* JJ.

## OPINION

AMIDEI, Justice.

SpawGlass Construction Corporation (SpawGlass) appeals from a summary judgment granted to the City of Houston (City) on its cross-motion for summary judgment in appellant's suit for declaratory judgment. Appellant filed suit seeking a declaration of its rights in the City's award of a construction contract to the low bidder on a renova-

* Justice Draughn is a visiting judge sitting by assignment.

tion project to a building, known as the 611 Walker project. Appellant filed a motion for summary judgment asking the trial court for declaratory judgment that the low bid from Constructors and Associates, Inc. (CAI) was invalid and the contract let to it by the City is void. The City filed a cross-motion for summary judgment alleging the bid from CAI was valid and the City had a right to waive immaterial defects in CAI's bid. The trial court denied appellant's motion for summary judgment, and granted the City's cross-motion for summary judgment without specifying the grounds. In one point of error, appellant contends the trial court erred in denying appellant's motion for summary judgment and granting the City's cross-motion for summary judgment because an unsigned and materially incomplete bid is invalid and any contract awarded thereon is void under Texas competitive bidding laws. As modified, we affirm the judgment of the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The City advertised for bids on the 611 Walker Street renovation project and received three bid proposals which were opened in council chambers on May 15, 1997. CAI's bid was $35,287,000.00, SpawGlass's bid was $35,355,000.00, and LTB Ward Constructors's bid was $39,200,000.00. On May 16, 1997, appellant filed a protest of CAI's bid, and addressed the council on June 24, 1997. On June 25, 1997, the City awarded the contract to CAI which commenced work on the project shortly thereafter, and the work is still in progress at this time. Thereafter, on June 27, 1997, appellant filed a suit seeking a declaration of its rights as follows:

(1) The bid submitted by CAI and opened by the City in council chambers on May 15, 1997, is materially incomplete, does not constitute a legally binding offer, is invalid, and will not provide the basis of a lawful contract.

(2) By considering and not rejecting the CAI bid as materially incomplete and invalid and by accepting such bid, the City is in violation of the Texas competitive bidding laws.

(3) The acceptance of CAI's bid by the City on June 25, 1997, and the purported formation of a contract thereon is void.

(4) Based upon the bids received and the circumstances set forth herein, the only legal alternatives open to the City were (a) reject all bids and rebid the Project or (b) delete the contingency allowance from the Project for later bid and award the contract to SpawGlass.

Thereafter, appellant filed its motion for summary judgment alleging it was entitled to a declaration of its rights as a matter of law. The City filed its cross-motion for summary judgment alleging the defects in CAI's bid were immaterial and could be waived by the City.

The judgment of the district court recited that the motion for summary judgment of SpawGlass was denied, the cross-motion for summary judgment of the City was granted, and "[a]ll relief not expressly granted is DENIED." The judgment did not declare any rights of the parties.

## II. STANDARD OF REVIEW.

■ A. Declaratory Judgments. The rule of law pursuant to the Uniform Declaratory Judgments Act, §§ 37.001—37.011, Texas Civil Practices and Remedies Code (formerly article 2524–1, Texas Revised Civil Statutes Annotated), is that if a declaratory judgment will terminate the uncertainty or controversy giving rise to the lawsuit, the trial court is duty-bound to declare the rights of the parties as to those matters upon which the parties join issue. *University of Tex. v. Nat. Colleg. Ath. Ass'n*, 685 S.W.2d 409, 410 (Tex.App.—Austin 1985, writ ref'd n.r.e.); *Calvert v. Employees Retirement System of Texas*, 648 S.W.2d 418, 419 (Tex.App.—Austin 1983, writ ref'd n.r.e.); Robert W. Calvert, *Declaratory Judgments in Texas*, 14 St. Mary's L.J. 1 (1982).

■ In suits for declaratory relief, a trial court has limited discretion to refuse a declaratory judgment, and may do so only where judgment would not remove the uncertainty giving rise to the proceedings. *Scurlock Permian Corp. v. Brazos County*, 869 S.W.2d 478, 486 (Tex.App.—Houston [1st

Dist.] 1993, writ denied). A declaratory judgment is appropriate when a real controversy exists between the parties, and the entire controversy may be determined by judicial declaration. *Id.* To constitute a justiciable controversy, there must exist a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *Id.* at 487. Courts may not give advisory opinions or decide cases upon speculative, hypothetical, or contingent situations. *Id.*

■ **B. Summary Judgment.** When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented. *Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex. 1997). The reviewing court should render such judgment as the trial court should have rendered. *Id.*

### III. DISCUSSION.

As was the case in *Calvert and University of Tex.,* the district court in this declaratory judgment suit failed to declare anything. Rather, the Court's judgment simply granted the City's cross-motion for summary judgment, denied appellant's motion for summary judgment, and denied all further relief. Because this is a declaratory judgment suit, we will modify the trial court's judgment so as to declare the law and the rights of the parties, and as modified, we will affirm the judgment. *See State v. Reconstruction Finance Corp.,* 258 S.W.2d 869, 872 (Tex.Civ.App.—Austin 1953, writ ref'd n.r.e.).

**A. Did the City have the right to waive the absence of CAI's signature on its bid?**

**1. The Summary Judgment evidence.** Appellant asserts that CAI's bid was invalid because the bid was not signed by CAI, and the signature page in the bid package was missing. The missing page also required CAI to acknowledge that its offer included a contingency allowance of $6.5 million, and to identify its asbestos abatement subcontractor. Appellant's primary contention is that

the missing signature of CAI was a "material defect" and could not be waived by the City.

**(a). CAI's bid package.** The record contains the bids of appellant and CAI. The first page of the bid form sent to CAI and appellant identifies the project, the name of the bidder, its address, and the total amount of the bid price for the project. CAI completed the first page with the name "Constructors & Associates, Inc., 909 Fannin, Suite 1125, Houston, Texas 77010" typed in, and with the name "Constructors & Associates, Inc.," written in unknown handwriting below the typewritten name. Below that the total bid price of "Thirty Five Million Two hundred eighty seven thousand & 00/100 DOLLARS ($35,287,000.00)," is written in unknown handwriting. The missing page three of the proposal originally provided a signature line for the responsible person submitting the bid, an acknowledgment that in this offer is a "4,680,000 Contingency Allowance," and a designation of the subcontractor that will accomplish the asbestos abatement required. On May 8, 1997, the City issued Addendum No. 4 that revised the contingency allowance amount from $4,680,000.00 to $6,500,000.00. Page 2 of CAI's bid form, paragraph 3.0 "Addenda," provided an acknowledgment by the bidder of the five addenda issued by the City. Also printed on the bid form in paragraph 3.0 was: "[T]he modifications to the Bid Documents noted therein have been considered and all costs relating thereto are included in the Bid Price." Opposite each "Addendum No." is typed in the number of the addendum and the date of the addendum, for all five addenda issued, including addendum 4, which raised the contingency allowance to $6.5 million. It is unknown who typed in these addendum numbers and dates.

Page two of CAI's bid is then followed by a "Bidder's Statement of M/WBE Status," relating to percentage goals for contracting with Minority or Women Business Enterprises, and is signed by Richard H. Hart, Chief Operating Officer for CAI. The next page is a contractor submission list concerning contributions to candidates for City elective offices, which is signed by Mr. Hart. The next document is a statement of residency that is also signed by Mr. Hart as CAI's representa-

tive. The final page in the bid package is an affidavit of non-interest requiring an acknowledgment that the bidder knows of no officer, agent, or employee of the City as being in any manner interested in the contract. Mr. Hart failed to sign this affidavit, but did type in CAI's name, and it was notarized.

Attached to the bid package is a bid bond for 10% of the bid amount [$3,528,700.00] guaranteeing CAI would enter into a contract with the City upon acceptance of its bid by the City, according to the terms of the bid. The bid bond was signed by a vice president of CAI as principal, and the American Home Assurance Company as surety.

**(b) Transcript of the City Council Meeting of June 25, 1997, accepting CAI's bid.** Appellant included in his response to the City's cross-motion for summary judgment a sworn transcription of the discussion and the action taken by the City Council on CAI's bid on June 25, 1997. The City Council voted on whether they should accept CAI's bid with the missing page and waive the defect, or reject the bid because the missing signature page was a substantial defect. The council heard from the City attorneys on the legality of CAI's bid. The City attorneys advised the City that CAI's bid was enforceable, despite the missing signature page, and CAI would be bound by the terms of their offer to perform the job for the amount they bid. The City attorneys advised the council that, under Texas law, CAI's bid, which was signed in three other places, demonstrated an intent to be bound by the terms of the bid. Also, the attorneys advised the council that a Texas case [*Bell v. Campbell*, 143 S.W. 953 (Tex.Civ.App.—Amarillo 1912, writ ref'd) ] was authority for the proposition that CAI's signed bid bond, together with the unsigned bid, would make an enforceable bid. The City attorneys advised the council that CAI would not have an unfair competitive advantage because their bid was legally enforceable as submitted; they could not change the bid price; and would be bound to perform within the original price bid, or forfeit their bond. After much discussion amongst council members and the City At-torney, the council voted to accept the bid and a contract was let to CAI.

**2. Applicable Law.** Appellant cites several cases in other states in support of his argument that the lack of a signature in the bid package is a material defect, and cannot be waived by the City. There are no Texas cases involving this particular issue and we will review appellant's authorities and the statutory authorities.

**a. The Texas statutes.** The competitive bidding procedures for this project are set out in sections 271.021 thru 271.028, of the Texas Local Government Code. The sections applicable to this case provide, in pertinent part:

§ 271.026. Opening of Bids.

(a) Bids may be opened only by the governing body of the governmental entity in a public meeting or by an officer or employee of the governing entity at or in an office of the governmental entity. *A bid that has been opened may not be changed for the purpose of correcting an error in the bid price* (emphasis added).

(b) *This subchapter does not change the common law right of a bidder to withdraw a bid due to a material mistake in the bid* (emphasis added).

§ 271.027. Award of the Contract.

(a) *The governing entity is entitled to reject any and all bids* (emphasis added).

(b) *The contract must be awarded to the lowest responsible bidder,* but the contract may not be awarded to a bidder who is not the lowest bidder unless ... each lower bidder ... is given an opportunity to appear before the governing body .... (emphasis added).

§§ 271.026 & 271.027 LOC. GOV'T CODE Ann. (Vernon's 1988 & Sup.1998).

**b. Texas Cases.** As stated above, there are no Texas cases on nonwaivable bid conditions. To date, Texas cases have established that the governmental unit has the absolute right to reject any and all bids, and that a rejected bidder has no property right in the award of the construction contract. *See DRT Mechanical Corp., et al., v. Collin County, Texas,* 845 F.Supp. 1159, 1162–63 (E.D.Tex.1994)(bidder has no property right

in the award of construction contracts); *Urban Elec. Serv., Inc. v. Brownwood Indep. School Dist.*, 852 S.W.2d 676 (Tex.App.—Eastland 1993, no writ) (solicitation of bids by governmental unit does not constitute an offer); *Assoc. General Contractors v. Corpus Christi*, 694 S.W.2d 581, 583 (Tex.App.—Corpus Christi 1985, no writ) (City had right to select the bid most advantageous, and reject all other bids); *A & A Const. Co. v. City of Corpus Christi*, 527 S.W.2d 833 (Tex.Civ. App.—Corpus Christi 1975, no writ) (bid by contractor is an offer and not binding until accepted by City, and City had a statutory right to reject any and all bids).

**c. The Law in Other Jurisdictions.** Because there are no Texas cases on nonwaivable bid conditions, appellant cites several cases from other jurisdictions involving defective bids. Decisions from other states are not binding on this court, and their value as a precedent is persuasive only. *Williams v. Cimarron Insurance Co.*, 406 S.W.2d 173, 175 (Tex.1966).

(1) *Ace–Manzo, Inc. v. Neptune Tp.*, 258 N.J.Super. 129, 609 A.2d 112 (Law Div.1992). This was a case of first impression in New Jersey where the low bidder, North Brunswick, failed to complete and execute page four of the bid proposal form for Neptune Township (Neptune). Neptune determined that the bid was nonresponsive and thereafter rejected all bids and readvertised for bids. Before the new bids were opened, Ace–Manzo filed suit to compel Neptune to contract to it as the lowest responsive bidder. The blank page four of North Brunswick's bid was included in their bid package, unsigned with none of the blanks completed on the form.

The New Jersey court stated the test of whether a bid condition is material and nonwaivable as follows:

> There must, therefore, be applied two criteria in determining whether a specific non-compliance constitutes a substantial and hence nonwaivable irregularity—first, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract would be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.

*Id.* 609 A.2d at 115.

The New Jersey court further cited the general rule whether the failure to execute a bid is a material, nonwaivable defect, as follows:

> Commentators have noted that "as a general rule, an unsigned bid will be rejected as nonresponsive on the theory that it does not constitute *a binding offer.* The competitive advantage that inheres in such a situation is obvious, for it would give such a bidder the option of waiting until it has had the benefit of knowing the other bidders prices before deciding whether to sign and be bound or not sign and walk away." *Cushman and Doyle, Construction Bidding Law* (1990), 6.13 at p. 147 (emphasis added).

*Id.* at 116.

Page four of the bid form in that case also had a provision that the bidder forfeit the bid bond as liquidated damages in the event the bidder was awarded the contract and failed to execute same. Although a bid bond made payable to Neptune was attached to the bid form, North Brunswick (by not completing and signing Page four) had not agreed to forfeit the bond as liquidated damages. The New Jersey court held:

> With no effective signature on Page four of the bid proposal, North Brunswick was not bound to its bid and therefore could walk away from the obligation to perform work on the project. North Brunswick could also await the bid opening, examine all other bids and then decide to sign the bid and be bound. This ability to manipulate the bidding process gave North Brunswick an unfair advantage over the other bidders and compromised fair competition. The required signature of a bidder on Page four of the bid proposal is a material condition and cannot be waived.

*Id.* at 117.

*Ace–Manzo* is not factually similar to this case because: (1) the bid form in this case

was signed on three separate attachments to the bid; (2) the missing page three did not provide for a forfeiture of the bid bond attached to the bid package; page two, which was attached to CAI's bid, did provide for bond forfeiture; (3) the bid bond in this case was signed by the vice president of CAI, and the surety, conditioned that CAI would perform the agreements in any contract awarded by the City as a result of its bid.

The City in this case cites *Bell v. Campbell*, 143 S.W. 953, 956 (Tex.Civ.App.—Amarillo 1911, writ ref'd) as authority for the proposition that CAI was bound by the terms of its bid because the bid bond guaranteed performance of any contract agreements awarded by the City. *Bell* involved the binding of a surety on a performance bond to the terms of a the contract guaranteed by the surety, although the contract was not signed by the surety. *Id.* at 956. The *Bell* court held, in pertinent part:

> [B]ut we are of the opinion that the conditions of the bond being for the performance of the agreements set forth in the contract, and two instruments having been executed at the same time, and referring each to the other, that appellants, as sureties upon said bond, were bound with the contractor as to the agreements and undertakings set forth in the contract. . . .

*Id.*

Under this authority, the City argues that, even if CAI did not sign page three, their signature on the bid bond guaranteeing performance of any contract awarded by the City, binds them to their unsigned bid. The two instruments submitted by CAI were made at about the same time and referred to each other. The City further cites *Lebow v. Weiner*, 420 S.W.2d 755, 758 (Tex.Civ.App.—Houston [14th Dist.] 1967, no writ) as authority for the proposition that CAI's bid form was signed in three other places with the intent to give validity to the bid, therefore, creating a legally enforceable obligation. Quoting the rule of law from *Newton v. Emerson*, 66 Tex. 142, 18 S.W. 348, 349 (Tex. 1886), the *Lebow* court stated, in pertinent part:

> "A deed or other instrument may be said to be signed whenever the name of its maker is so written upon it as to evidence his intention to give authenticity to it. At common law the seal was the sign, and a sealing was regarded as a signing,—as the act evidencing the intention of the maker to give vitality to the instrument; so, under the laws of those states in which sealing has been dispensed with and subscription is not required, it has been very generally held that the writing of the name of the maker in the body of the instrument, in such connection as to evidence his intention to give effect, vitality, or authenticity to the entire writing as one completed instrument, is to be deemed a signing, within the meaning of the law."

*Id.* at 758.

The City argues *Ace–Manzo* does not apply to this case and, that under the Texas authority cited, CAI had created a legally enforceable obligation with its bid which gave CAI no unfair competitive advantage. We agree that the case is unpersuasive because it is factually dissimilar to this case.

(2) *Geo. W. Kennedy Const. Co., Inc., v. City of Chicago*, 135 Ill.App.3d 306, 90 Ill. Dec. 113, 481 N.E.2d 913 (1985), *vacated as moot, judgments dismissed*, 112 Ill.2d 70, 96 Ill.Dec. 700, 491 N.E.2d 1160 (1986). This case is factually similar to *Ace–Manzo* where the City of Chicago was presented with an unexecuted signature sheet in a bid much the same way as in *Ace–Manzo*. When determining whether a bid variance was material, the Illinois court applied the test of "whether a bid variance gives a bidder a substantial advantage or benefit not enjoyed by other bidders" (citing *Leo Michuda & Son Co. v. Metropolitan Sanitary District*, 97 Ill.App.3d 340, 52 Ill.Dec. 869, 422 N.E.2d 1078 (1981)). *Id.* 481 N.E.2d at 916. In the *Kennedy* case, *none* of the pages in the bid package were signed by the president of the corporation, or any authorized person on behalf of the corporation. After the bids were opened, Kennedy was contacted, and the president then signed the corporate signature page of the bid. The City informed Kennedy that its bid was not responsive because it was not properly signed at the time it was submitted and formally opened. The Illinois court of ap-

peals found that Kennedy "was not bound to the terms of its bid and if it were awarded the contract, Kennedy could disavow it at anytime." *Id.* at 916. The court concluded that "this ability to disavow the contract would put Kennedy in a competitively advantageous position in relation to the other bidders." *Id.* The court refused further to find that Kennedy's signature on the bid bond would cure the defect in the bid package and reasoned that Kennedy could withdraw from the contract, forfeit the 5% liquidated damages on the bid bond, and still win in a suit by the City on the contract. *Id.* at 918. The court further found that Kennedy could disavow the contract and sustain only the loss on the bid bond, if it deemed such to be financially prudent. *Id.* Under all these circumstances, the court found Kennedy had a substantial advantage over the other bidders. *Id.*

*Kennedy* was dismissed as moot by the Illinois Supreme Court and the judgments were vacated, and the court did not express any view on the merits of the cases. *George W. Kennedy Const. v. City of Chicago,* 112 Ill.2d 70, 96 Ill.Dec. 700, 491 N.E.2d 1160, 1161 (1986). *Kennedy* is factually dissimilar to this case, and, therefore, we find this authority unpersuasive.

(3) *Leo Michuda & Son Co. v. Metropolitan Sanitary District of Greater Chicago,* 97 Ill.App.3d 340, 52 Ill.Dec. 869, 422 N.E.2d 1078 (1981). This case involved the bidder's failure to attach a mandatory goal disclosure form listing subcontracts intended for award to minority and small businesses as evidence of the bidder's commitment to the goal of minority and small business participation. The *Michuda* court found such failure gave the low bidder a substantial advantage not enjoyed by other bidders. *Id.* 422 N.E.2d at 1083. The court held: "Brant's [the low bidder] submission of its Goal Disclosure Form approximately one month after the bids were opened gave it the advantage of negotiating with minority subcontractors after it had submitted the apparent low bid." *Id.* at 1083.

*Michuda* does not involve a failure to submit a signed bid, but held, under the facts in that case, that the failure to submit a minori-

ty business goal disclosure was a material variance requiring rejection of the bid. Because *Michuda* is factually dissimilar, we do not find it persuasive.

(4). *Thigpen Constr. v. Parish of Jefferson,* 560 So.2d 947 (La.Ct.App.1990). The Parish rejected Thigpen's bid because the signature page was missing. Thigpen argued he signed the signature page but the page had been inadvertently omitted from the bid package. *Id.* at 950. There is nothing in the *Thigpen* opinion indicating Thigpen signed any of the bid forms elsewhere with the intent to give validity to the bid. The Parish rejected the bid as being nonresponsive, and the court of appeals held the failure to sign the bid was a substantial failure to comply with the terms of the contract proposal and, therefore, the Parish properly rejected it. *Id.* at 951.

*Thigpen* is factually dissimilar to this case and we also find it unpersuasive.

(5). *Whitemarsh Township Auth. v. Finelli Bros., Inc.,* 408 Pa. 373, 184 A.2d 512 (1962). The Pennsylvania Supreme Court held that where the Township authority's regulations required that the bid proposal be properly signed and it was not, said failure was nonwaivable and the bid was void. Finelli submitted its proposal which contained *no* signatures. Finelli's bid was the low bid and Finelli refused to enter the Township's contract. The Township sued Finelli for liquidated damages.

There is nothing in the reported opinion in this case indicating Finelli signed other pages of the bid form with the intent to give validity to the bid. Also, *Whitemarsh* involved specific City regulations, which is not the case here. We find *Whitemarsh* is factually dissimilar and unpersuasive.

(6). *AAB Elec., Inc. v. Stevenson Pub. Sch. Dist.,* 5 Wash.App. 887, 491 P.2d 684 (1971). This reported opinion indicates that the low bidder failed to sign the bid form *anywhere. Id.* 491 P.2d at 686. The bidder argued his bid bond adequately protected the school and they should have accepted his bid. *Id.* at 687. The court rejected this argument because "the general rule is that the surety is not liable to the creditor unless his princi-

pal is liable, thus he may plead the defenses which are available to his principal." *Id.* at 687. The court reasoned the bidder, as principal, would not be liable to the school district because the unsigned bid could not legally have been accepted. *Id.* Therefore, the surety was not liable. *Id.*

*AAB Elec.* is factually dissimilar to his case and is unpersuasive.

(7) *Farmer Constr. Ltd v. State Dept. of Gen'l Admin.*, 98 Wash.2d 600, 656 P.2d 1086 (1983). Farmer Constructions Limited (Farmer) was the low bidder on a State project, and submitted an unsigned bid form with the name of Wayne Farmer, president of Farmer, typed in the blank space provided for his written signature. Included with the bid document was a bid bond containing the handwritten signature of Wayne Farmer. The bid proposal made reference to the bid bond accompanying it, and the bid bond referred to the bid proposal. The State rejected the bid citing *AAB Elec.*, above, as authority. *Id.* 656 P.2d at 1088. Farmer brought an action for a declaratory judgment that the State improperly rejected its bid. *Id.* Farmer contended the requirement of a handwritten signature on the bid form was an informality waivable by the State; the trial court agreed, and a contract was let to Farmer to perform the construction. *Id.* Century Construction Company (Century), the intervenor in the trial court, appealed.

The Washington Supreme Court stated the "test as to the materiality of a variance is whether it gives a bidder a substantial advantage or benefit not enjoyed by other bidders" (citing *AAB Elec.*, discussed above, and other cases). *Id.* at 1088. The court cited *Eastside Disposal Co. v. Mercer Island*, 9 Wash.App. 667, 513 P.2d 1047 (1973), as similar and controlling because the bid proposal referred to the accompanying bid bond, the bid bond referred to the bid proposal, and the bond was signed by the bidder and its surety. *Id.* Under those circumstances, the bid proposal and bid bond were part of the entire bid submitted by the bidder. *Id.* at 1089. The writings were so connected by *internal reference* in the signed memorandum to the unsigned one, that they may be said to constitute one paper relating to the

contract. *Id.* at 1089. Under these circumstances, Farmer's bid was a binding offer which it would be bound to honor upon acceptance by the contracting authority. *Id.* Because the bid would be legally enforceable, Farmer would have no competitive advantage over other bidders because Farmer's could not have accepted or rejected the contract as it saw fit. *Id.*

In the present case, page one of CAI's proposal referred to the bid bond by providing:

**Security Deposit.** We have included herewith the Security Deposit and other enclosures as required by Document 00100—Instructions to Bidders.

Page two of the proposal referred to the bid bond by providing:

**Forfeiture of Security Deposit.** If this Bid is accepted within the time period stated above and Bidder fails to provide the bonds and other required documentation listed in Document 00450—Post–Bid Procedures within the time stated in that Document, the Security Deposit or a portion thereof shall be forfeited as described in Document 002100—Instructions to Bidders.

The bid bond provided that if the City accepted the bid according to its terms, CAI would perform the contract in accordance with the terms of such bid, but if CAI failed to enter such contract with the City and give a performance bond, then the bid bond could be forfeited. In this case, the bid proposal referred to the accompanying bid bond (the "security deposit"), the bid bond referred to the bid proposal, and they were both executed at about the same time. Under the Texas case of *Bell v. Campbell*, cited in this opinion, CAI, as contractor, *and* its surety, "were bound ... as to the agreements and undertaking set forth" in the bid. *Bell*, 143 S.W. at 956. Likewise, under the reasoning in *Farmer*, CAI would be legally bound and would have no competitive advantage. The law in Washington State is that when the bid and the bid bond refer to each other, and the writings are so connected by internal reference to each other, they constitute one paper relating to the offer. *Farmer*, 656 P.2d at

1089. We find *Farmer* to be factually similar to this case and persuasive.

(7) *Menefee v. County of Fresno (Brewer–Kalar)*, 163 Cal.App.3d 1175, 210 Cal.Rptr. 99 (1985). Brewer–Kalar submitted the low bid on a drainage project for Fresno County but failed to sign the appropriate line on page four of the bid proposal. Brewer–Kalar's principals signed other pages of the bid proposal: a price correction was signed and initialed on page 2.4; an "equal opportunity" certification was signed on page 6; a "Minority Business Enterprise" certification was signed on page 7; another "equal opportunity" certification was signed on page IV–2; and the bid bond was signed. *Id.* 210 Cal. Rptr. at 103.

The court held: "[a]nalogizing to statute of frauds cases, it does not matter *where* the bid was signed, so long as it has been signed by the appropriate parties." *Id.* at 103. The court found that the bid was enforceable and Brewer–Kalar did not have an unfair advantage. *Id.* at 102–103.

*Menefee* is factually similar and is persuasive.

■ **3. Conclusion.** The authorities cited all are unanimous in holding that a material defect is one that would allow the bidder to avoid the binding nature of his bid. Secondly, a variance is material if it gives a bidder a substantial advantage or benefit not enjoyed by other bidders. The Texas case cited by the City, *Lebow v. Weiner*, is in agreement with the *Menefee* case, cited above, in that it makes no difference where the bid is signed, as long as it is signed by the proper parties (*Menefee*, 210 Cal.Rptr. at 103) with the intent to give it validity (*Lebow*, 420 S.W.2d at 758). Accordingly, we find that CAI's signing of the bid in three places other than on the signature page created an enforceable obligation, and the City was authorized to waive the immaterial defect of the missing signature page three.

Furthermore, *Bell v. Campbell* (143 S.W. at 956) and *Farmer* (656 P.2d at 1089) are in agreement that when the bid and the bid bond refer to each other, and the writings are so connected by internal reference to each other, they constitute one paper relating to the offer. *Bell* provides that *both* the surety and principal are bound to the terms of an unsigned contract attached to the performance bond when the two instruments were signed at the same time and referred to each other. *Bell*, 143 S.W. at 956.

Under the facts in this case, we find that the failure of CAI to submit a signed signature page with its bid proposal was a waivable defect because: (1) CAI signed the proposal in three other places with the intent to give validity to its bid, and (2) because the bid and the bid bond are so connected by internal reference to each other, they could be treated as one signed instrument. Appellant's contention that CAI's bid was invalid for lack of a signature on the signature page is overruled.

**B. Would the Defects in CAI's Bid Provide a Competitive Advantage to CAI if Waived by the City?**

■ **1. Failure to designate an asbestos contractor.** We have found that CAI submitted a legally enforceable bid and would be bound by the terms of it. Section 271.026, Texas Local Government Code, provides: "A bid that has been opened may not be changed for the purpose of correcting an error in the bid price." Appellant argues that the missing page also required CAI to furnish the name of an asbestos contractor and acknowledge the contingency allowance. Appellant contends these bid conditions were material, and a failure to furnish the information was not waivable by the City. The City argues the name of the asbestos contractor in the bid was not material and all bidders were free to chose another contractor. The record contains a document entitled: "Conditions of the Contract." Section 5.2.1 of the document provides:

After receipt of notice of intent to award, Contractor shall submit in writing to the City Engineer the names of Subcontractors and Suppliers *proposed* for each principal portion of the Work, with a description of the work. The City Engineer will reply to the Contractor in writing stating whether or not the City, after due investigation, has reasonable objection to any

such proposed person or entity .... (emphasis added).

Section 5.2.2 of the document provides:

The Contractor shall not contract with a proposed Subcontractor or Supplier to whom the City Engineer has made reasonable and timely objection.

Section 5.2.3 provides:

If the City Engineer has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the City Engineer has no reasonable objection.

We find nothing in the bid documents that makes the designation of an asbestos contractor on page three of the bid a mandatory requirement as was the case in *Michuda*, 52 Ill.Dec. 869, 422 N.E.2d at 1083. The Conditions of the Contract indicate that the contractor can send in the names of its *proposed* subcontractors, after receiving intent of the award. Nothing in these conditions required the subcontractor to be the one named in the bid form. Appellant cites no further authority to support his argument that such omission is a material defect, and we could find none. We find the failure of CAI to name its proposed asbestos contractor not to be a material defect and the omission was properly waived by the City.

■ **2. Failure to acknowledge the contingency allowance.** Appellant contends CAI's bid did not acknowledge the contingency allowance in the amount of $6.5 million. Appellant asserts the missing page with the allowance was a material defect that cannot be waived by the City.

The contingency allowance was printed into all bid forms as follows:

The undersigned hereby acknowledges that included in his Offer is a $4,680,000 Contingency Allowance. Refer Section 01020 of these documents.

Thereafter, the City submitted Addendum 4 requiring the contingency allowance to be raised to $6.5 million. On page two of CAI's bid, at section 3.0 "Addenda,"is printed:

Addenda have been The following received [sic]. The modifications to the Bid Documents noted therein have been considered and all costs relating thereto are included in the Bid Price:

Page two acknowledges receipt of Addendum No. 4, dated 5/8/97. The same acknowledgment was on the bid from SpawGlass. However, SpawGlass contends they never received the addendum and their bid allowed only the $4.68 million printed on the bid form. CAI subsequently confirmed the fact that their bid included the $6.5 million contingency allowance. We find that by signing the bid proposal, as indicated in this opinion, CAI effectively acknowledged that its bid included the $6.5 million contingency allowance because page two indicated receipt of Addendum 4 and a statement that CAI's bid price included the contingency allowance. The City could waive the missing page acknowledgment of a contingency allowance as immaterial.

■ **3. Competitive Advantage to CAI by waiver of defects by the City.** Appellant contends the missing signature of CAI, the missing asbestos contractor name, and the missing acknowledgment of the contingency allowance on page three provided CAI with a competitive advantage. By not submitting a signed bid, appellant contends that CAI could wait until the other bids were opened and then withdraw the bid if it was too low, or decide to sign it after the other bids had been opened. Appellant further contends that by not submitting the name of the contractor, CAI could have waited until the bids were opened and then negotiated for a better deal with the subcontractor; failing this, CAI could withdraw its bid. Likewise, by not acknowledging the $6.5 million contingency allowance, appellant contends CAI could wait and then either add the $6.5 million to the bid or withdraw its bid.

We have found that CAI's bid *was* signed and that it was legally enforceable. If CAI attempted to withdraw its bid because of its failure to submit the signature page, the City would have had a right to forfeit the bond. Section 271.026, Texas Local Government Code, provides that once a bid has been opened, it may not be changed to correct the bid price, but the bidder still has a common law right to withdraw a bid due to a material mistake in the bid. If CAI were to withdraw

its bid, alleging it did not acknowledge the contingency allowance and the asbestos contractor name, the City could likewise enforce its option to forfeit CAI's bid bond because these were not "material mistakes." Because we have found CAI's bid was valid, and could not be withdrawn for failure to sign or acknowledge the contingency allowance or furnish the name of the asbestos contractor, it follows that they were not given any benefit or competitive advantage over the other bidders. We overrule appellant's contention that CAI's bid contained material defects, and that waiver of these defects provided CAI with an unfair advantage.

**3. Defects in CAI's Bid as affecting the City's contract.** Appellant contends the surety on CAI's bid bond could avoid its obligation because a surety is only liable if its principal is liable. We have already found CAI's bid was legally enforceable under Texas law, and therefore, the surety would be liable. We overrule this contention.

**4. Legal Options Available to the City.** Appellant contends CAI's bid was not enforceable and the City should have (1) rejected the bid and awarded the contract to SpawGlass, or (2) rejected all the bids and reopened the bidding process. These alternatives were not available to the City because CAI's bid was legally enforceable. We overrule this contention.

## IV. CONCLUSION.

We overrule appellant's sole point of error. The judgment of the trial court is affirmed except as modified to declare the rights of the parties as requested in appellant's petition for declaratory judgment, as follows:

1. The bid submitted by CAI and opened by the City in council chambers on May 15, 1997, is materially complete, constituted a legally binding offer, was valid and enforceable, and provided the basis of a lawful contract.

2. By considering and accepting the CAI bid as materially complete and valid, the City is not in violation of the Texas competitive bidding laws.

3. The acceptance of CAI's bid by the City on June 25, 1997, and the formation of the contract thereon is valid.