

Office of the Attorney General · State of Texas

JOHN CORNYN

January 5, 2001

The Honorable Jeff Wentworth
Chair, Nominations Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711-2068

Opinion No. JC-0326

Re: Legality of contract award by the City of San Antonio (RQ-0268-JC)

Dear Senator Wentworth:

You ask a number of questions about the legality of a contract award by the City of San Antonio. As this office cannot make findings of fact,[1] we cannot determine whether the city violated the law in awarding the contract. For this reason, we answer your questions only in the most general terms. We do conclude that section 252.042 of the Local Government Code, which requires a city to treat offerors fairly and equally with respect to any opportunity for discussion and revision of proposals, applies only to requests for proposals made under section 252.021 of the Local Government Code.

You inform us that the city council approved a process for awarding an advertising contract for the San Antonio Convention and Visitors Bureau ("SACVB") by a request for proposals and solicited proposals for the contract from advertising and marketing agencies in February 2000. The deadline for proposals was April 21, 2000. The letter soliciting proposals informed potential proposers that proposals should include a Good Faith Effort Plan regarding the manner in which the proposers would use minority and women owned business enterprises. The city received three proposals as of April 21. Your request asserts that only one provided a detailed Good Faith Effort Plan; the other two proposals included plans of a more general nature. In July 2000, the city invited the three proposers to clarify or revise their Good Faith Effort Plans. In August 2000, the city awarded the contract to one of the companies that had not submitted a detailed Good Faith Effort Plan in April. The proposer that did submit a detailed plan in April challenges the legality of the city's decision to allow the other proposers to revise or clarify their plans after the April 21 deadline and to award the contract to the other proposer.[2]

---

[1]See, e.g., Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2 (stating that investigation and resolution of fact questions cannot be done in opinion process); M-187 (1968) at 3 ("[T]his office is without authority to make . . . factual determinations."); O-2911 (1940) at 2 ("[T]his . . . presents a fact question which we are unable to answer.").

[2]See Letter from Honorable Jeff Wentworth, Chair, Nominations Committee, Texas State Senate, to Honorable John Cornyn, Texas Attorney General at 2-6 (Aug. 14, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

The city informs us that the contract at issue is "budgeted at over $4.6 million dollars annually."[3] We gather that the city council approved a document called "SACVB RFP Process, Schedule, Selection Criteria, and Review Committee." City Brief, note 3, at 2. We have not received a copy of this document.

Chapter 252 of the Local Government Code generally requires a municipality to comply with competitive bidding requirements when making purchases exceeding $15,000. *See* TEX. LOC. GOV'T CODE ANN. § 252.021(a) (Vernon Supp. 2000) ("Before a municipality may enter into a contract that requires an expenditure of more than $15,000 from one or more municipal funds, the municipality must comply with the procedure prescribed by this chapter for competitive sealed bidding or competitive sealed proposals."). Chapter 252 allows competitive sealed proposals for certain kinds of purchases, namely high technology procurements and those made with municipal funds "derived from an appropriation, loan, or grant received . . . from the federal or state government for conducting a community development program" established under chapter 373 of the Local Government Code, the Texas Community Development Act of 1975. *See id.* §§ 252.021(c), (d) (Vernon Supp. 2000); .042 (Vernon 1999); *see also id.* §§ 373.001-.007 (Vernon 1999) (Texas Community Development Act of 1975). In addition, other state and federal standards may govern purchases made with state or federal grant money. *See* TEX. GOV'T CODE ANN. §§ 783.001-.009 (Vernon 1994 & Supp. 2000) (Uniform Grant and Contract Management Act); *see also* UNITED STATES OFFICE OF MANAGEMENT & BUDGET, CIRCULAR A-87 (1995), *amended* (1997); *id.* CIRCULAR A-102 (1994), *amended* (1997).[4]

Section 252.022 of the Local Government Code provides that chapter 252 "does not apply to an expenditure" for a number of different types of items, including "a procurement for personal, professional, or planning services." TEX. LOC. GOV'T CODE ANN. § 252.022(a)(4) (Vernon Supp. 2000). Furthermore, section 252.002 provides that "[a]ny provision in the charter of a home-rule municipality that relates to the notice of contracts, advertisement of the notice, requirements for the taking of sealed bids based on specifications for public improvements or purchases, the manner of publicly opening bids or reading them aloud, or the manner of letting contracts and that is in conflict with this chapter controls over this chapter unless the governing body of the municipality elects to have this chapter supersede the charter." *Id.* § 252.002 (Vernon 1999).

You ask whether "a proposer who fails to comply with the City's Request for Proposal requirements . . . [is] qualified to receive a contract award" and whether "a city violate[s] its own Request for Proposal" by allowing proposers to form new business relationships and submit new information after the deadline for submissions. *See* Request Letter, *supra* note 2, at 6-7. We are not able to definitively resolve these questions.

---

[3]Brief from David J. LaBrec, Strasburger & Price, L.L.P., to Susan D. Gusky, Chair, Opinion Committee, Office of the Attorney General at 2 (Sept. 28, 2000) (on file with Opinion Committee) [hereinafter City Brief].

[4]*Available at* http://www.whitehouse.gov/OMB/grants/index.html.

First, the legal framework under which the city awarded the contract is not clear either from your request or the materials we have received from the city. Apparently, the city used a request for proposals procedure to award the advertising contract. As we have seen, chapter 252 generally reserves requests for proposals to certain kinds of contracts. Although section 252.002 authorizes a home-rule city to modify the requirements of chapter 252 in its city charter, we have no information about whether the City of San Antonio has done so. Furthermore, we have received a brief from the City of San Antonio insisting that it awarded the contract at issue as a professional services contract, which would be exempt from chapter 252. *See* City Brief, *supra* note 3, at 5-7. Whether a contract is one for professional services exempt from chapter 252 is generally a fact question within the province of a city's governing body: "[A] municipality has discretion in the first instance to determine whether particular services, other than those covered by [chapter 2254 of the Government Code] are professional services for purposes of exemption from competitive bidding requirements under Local Government Code section 252.022." Tex. Att'y Gen. Op. No. DM-106 (1992) at 2. This office cannot review the city's determination to the extent it depends upon findings of fact. *See id.* ("determinations as to whether particular services, other than those covered by [chapter 2254 of the Government Code] are professional services for competitive bidding purposes, frequently involve fact questions that the opinion process cannot address"); *see also* Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2, M-187 (1968) at 3, O-2911 (1940) at 2, *supra* note 1.

Second, even if we were able to establish the correct legal framework under which to analyze the contract award, we would still not be able to resolve your questions about the legality of the city's conduct because their resolution would also involve questions of fact. For example, assuming that the contract was competitively bid under chapter 252, whether or not the city acted appropriately in permitting two of the three proposers to amend their Good Faith Effort Plans could depend upon whether a sufficiently detailed Good Faith Effort Plan constituted a mandatory bid specification and, if so, whether it was a waivable or nonwaivable bid condition. The city suggests that detailed Good Faith Effort Plans were not required, that each of the three proposers submitted complete Good Faith Effort Plans, and that no bid condition was waived.[5] The complaining advertiser believes, however, that a detailed Good Faith Effort Plan was a mandatory bid specification with which the other proposers failed to comply. This office cannot resolve that factual dispute. Moreover, this office cannot resolve whether the defect in the bid specifications, if there was one, was waivable or nonwaivable. Case law suggests that a nonwaivable defect in a bid is one "that would allow the bidder to avoid the binding nature of his bid" and "if it gives a bidder a substantial advantage or benefit not enjoyed by other bidders." *Spawglass Constr. Corp. v. City of Houston*, 974 S.W.2d 876, 885 (Tex. Civ. App.–Houston [14th Dist.] 1998, pet. denied). This office cannot engage in the factual inquiry necessary to make those determinations. *See* Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2, M-187 (1968) at 3, O-2911 (1940) at 2, *supra* note 1.

You also ask whether "a city violate[s] the [Local] Government Code requiring that all proposers be treated fairly when it discloses one proposer's minority and women's plan and grants

---

[5]*See* Letter from Frank J. Garza, San Antonio City Attorney, to Seagal V. Wheatley, Jenkens & Gilchrist, P.C. (Aug. 11, 2000) (on file with Opinion Committee); *see also* City Brief, *supra* note 3, at 7.

an extension beyond the deadline to let two (2) other proposers change their proposals to add such a required plan," Request Letter, *supra* note 2, at 6, and if a city "violates the fair treatment requirements of the [Local] Government Code by permitting two proposers to 'team up' after the deadline," *id.* at 7. The questions appear to refer to section 252.042 of the Local Government Code, which provides as follows:

> (a) Requests for proposals made under Section 252.021 must solicit quotations and must specify the relative importance of price and other evaluation factors.

> (b) Discussions in accordance with the terms of a request for proposals and with regulations adopted by the governing body of the municipality may be conducted with offerors who submit proposals and who are determined to be reasonably qualified for the award of the contract. *Offerors shall be treated fairly and equally with respect to any opportunity for discussion and revision of proposals.* To obtain the best final offers, revisions may be permitted after submissions and before the award of the contract.

TEX. LOC. GOV'T CODE ANN. § 252.042 (Vernon 1999) (emphasis added).

Section 252.042 does not appear to apply to the contract at issue. As noted above, section 252.042 on its terms applies only to requests for proposals under section 252.021. That section provides in subsection (c) that "[a] municipality may use the competitive sealed proposal procedure only for high technology procurements or, in a municipality with a population of 75,000 or more, the purchase of insurance." *Id.* § 252.021(c) (Vernon Supp. 2000). The advertising contract at issue does not appear to be a contract for a high technology item. *See id.* § 252.001(4) (Vernon 1999) ("'High technology procurement' means the procurement of equipment, goods, or services of a highly technical nature, including: (A) data processing equipment and software and firmware used in conjunction with data processing equipment; (B) telecommunications equipment and radio and microwave systems; (C) electronic distributed control systems, including building energy management systems; and (D) technical services related to those items."). In addition, a request for proposal process may be used to make expenditures with certain municipal funds. Subsection (d) of section 252.021 provides that:

> [t]his chapter does not apply to the expenditure of municipal funds that are derived from an appropriation, loan, or grant received by a municipality from the federal or state government for conducting a community development program established under Chapter 373 [the Texas Community Development Act of 1975] if under the program

> items are purchased under the request-for-proposal process described
> by Section 252.042.

*Id.* § 252.021(d) (Vernon Supp. 2000). We have not been provided any information suggesting that the expenditure at issue was made with municipal funds derived from an appropriation, loan, or grant received by the city from the federal or state government for conducting a community development program under the Texas Community Development Act of 1975.

In sum, given the factual nature of the inquiry, we cannot determine whether the successful proposer was qualified to receive the contract or whether the city violated its request for proposals. Section 252.042 of the Local Government Code, which requires a city to treat offerors fairly and equally with respect to any opportunity for discussion and revision of proposals, applies only to requests for proposals made under section 252.021 of the Local Government Code.

## S U M M A R Y

Section 252.042 of the Local Government Code, which requires a city to treat offerors fairly and equally with respect to any opportunity for discussion and revision of proposals, applies only to requests for proposals made under section 252.021 of the Local Government Code.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee